682 A.2d 811

**COMMONWEALTH of Pennsylvania**

v.

**Frederick W. FISHER, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted May 14, 1996.

Filed Aug. 14, 1996.

566

Philip D. Lauer, Easton, for appellant.

Mary B. Seiverling, Deputy Attorney General, Harrisburg, for Commonwealth, appellee.

Before JOHNSON, FORD ELLIOTT and HOFFMAN, JJ.

JOHNSON, Judge:

Frederick W. Fisher, Jr., appeals from the judgment of sentence imposed following his convictions for corrupt organizations, theft by deception, and forgery. Because we find that the conviction for corrupt organizations must be overturned, we vacate the judgment of sentence on that count. In all other respects, we affirm the judgment of sentence.

Fisher was charged with the above-stated offenses following an investigation into a real estate scheme involving property in the Monroe and Pike County area. Following a jury trial, Fisher was convicted of one count of corrupt organizations, twenty-six counts of theft by deception, and five counts of forgery. After considering Fisher's post-trial motions, the trial court arrested judgment on four of the theft by deception charges and ruled that one of the theft by deception charges was barred by the statute of limitations. Subsequently, the court sentenced Fisher to an aggregate term of 13 years and 3 months' to 28 years and 6 months' imprisonment, imposed a fine of $10,000, and ordered Fisher to pay restitution and the costs of prosecution. Post-sentence motions were filed and denied without a hearing. This appeal followed.

We have re-numbered Fisher's issues for the purposes of review. On appeal, Fisher contends that (1) the evidence was

insufficient to support his convictions. Fisher also maintains that the trial court erred in; (2) permitting certain irrelevant and immaterial evidence to be presented to the jury; (3) failing to dismiss some of the charges based upon the expiration of the statute of limitations; and (4) refusing certain requested jury instructions. Finally, Fisher claims that (5) the court imposed an improper sentence.

In reviewing a challenge to the sufficiency of the evidence, "an appellate court must determine whether the evidence was sufficient to enable the [fact-finder] to find every element of the crime charged, beyond a reasonable doubt, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner." *Commonwealth v. Zimmick*, 539 Pa. 548, 554, 653 A.2d 1217, 1220 (1995).

A person is guilty of theft by deception if he intentionally obtains property from another person by deception. 18 Pa.C.S. § 3922; *Commonwealth v. Lawson*, 437 Pa.Super. 521, 650 A.2d 876 (1994), *appeal denied*, 540 Pa. 596, 655 A.2d 985 (1995). Deception occurs when that person creates or reinforces a false impression regarding the value of property, or fails to correct a previously created false impression that influences the victim regarding such value. 18 Pa.C.S. §§ 3922(a)(1), (3). In the present case, the Commonwealth was required to prove that Fisher intentionally created a false impression in the minds of buyers regarding the value of the lots that he was selling and then used the buyers' reliance on that false impression to obtain the buyers' money. *Commonwealth v. Imes*, 424 Pa.Super. 633, 639, 623 A.2d 859, 862 (1993). "The Commonwealth must demonstrate not only the presence of a false impression but that the victim relied upon that impression." *Lawson, supra*, at 529, 650 A.2d at 880; *Imes, supra.* Fisher has been convicted of 21 counts of theft by deception. The trial court found, and, after a review of the record, we agree, that Fisher systematically convinced people to trust him and to purchase property or services from him. N.T., November 30, 1993, at 72–99, 147–189; N.T., December

1, 1993, at 140–161, 188–218; N.T., December 2, 1993, at 5–33, 52–71, 82–101, 113–128; N.T., December 3, 1993, at 7–28, 59–76, 90–109; N.T., December 6, 1993, at 68–91, 130–165; N.T., December 8, 1993, at 6–35; N.T., December 9, 1993, at 8–27, 45–71, 85–108, 121–46, 169–85; N.T., December 10, 1993, at 41–56; N.T., December 13, 1993, at 68–86, 118–39.

Fisher distributed by hand, on the highways leading into the Pocono area from New York City and New Jersey, flyers advertising lake-front properties for sale. Fisher also advertised these properties in various New York and New Jersey newspapers. After responding to the advertisements, buyers were directed to come to Fisher's office and were shown several available lots by one of Fisher's associates. After a lot was chosen, the associate escorted the buyer back to Fisher's office and Fisher encouraged the buyer to sign a binder on the property and give him as little as $100 for a down payment. If the buyer asked whether the lot was suitable for building, Fisher reassured the buyer that he had nothing to worry about and that the land was "perked," meaning that it was approved for a septic system. At this point in the negotiations, Fisher had the buyer fill out a mortgage application and assured him that Fisher would arrange for financing. Fisher did not send these mortgage applications to a bank or mortgage company; instead, he issued payment books himself under bogus corporations with impressive names such as "Chase Mortgage Company" and "Monroe–Pike Mortgage Company." After a few days, his secretary called the buyer, told him that the mortgage had been approved, and set up an appointment for the closing on the property.

Fisher typically instructed the buyer to bring to the closing two certified checks payable to themselves. Fisher assured the buyer that the checks would clear the bank more quickly if made payable in this fashion. One check was designated to cover the balance due on the down payment for the land, and the other was for closing costs, recording fees, transfer taxes, preparation of documents, and title insurance. Fisher assured the buyers as they left the office that they would receive all the necessary documents, including results of the perk tests,

in the mail within a few weeks. Typically, however, the buyer received only a mortgage payment book. Buyers did not receive notice that title transfer taxes had been paid or that the new deed and mortgage had been recorded. A buyer attempting to build on his lot soon discovered that the property did not perk and could not be built upon without incurring significant additional expense, or, in some instances, could not be used for building at all. When the buyer attempted to contact Fisher regarding his dissatisfaction with the lot, Fisher avoided all phone calls, and often left for an extended trip to Bermuda. Many buyers attempted, in vain, to obtain a return of their down payments from Fisher.

Some of the victims did not purchase property from Fisher. Instead, they contracted with him for the performance of perk tests on land that they owned in the vicinity of the properties Fisher was attempting to sell. Fisher, acting in the name of Monroe–Pike Sewer Contracting, charged $250 in advance for this testing. None of the tests were performed, nor could the victims achieve a refund of their money. Still other victims contracted with Fisher, acting under the name of Redi-to-Finish homes, for the construction of a shell or frame of a house. Fisher failed in these instances to complete construction and did not return the victims' down payments on these homes. Eventually, several buyers complained to the Attorney General's office and Fisher was charged in connection with these matters.

Intent to deprive persons of their property is an essential element of theft by deception. *Commonwealth v. Grife,* 444 Pa.Super. 362, 368, 664 A.2d 116, 119 (1995), *appeal denied,* 544 Pa. 654, 676 A.2d 1196 (1996); *Lawson, supra; Imes, supra.* There is ample evidence that the victims in this case relied upon Fisher's representation that the land was suitable for building when purchasing the land. *See, e.g.,* N.T., November 30, 1993, at 73, 80; N.T., December 1, 1993, at 140–41, 151, 191; N.T., December 2, 1993 at 8, 14, 24, 54, 85. Fisher argues that the Commonwealth has failed to prove that he intended to deceive the buyers regarding the value of the property because he had the power to deliver good title to

the property at the time the property was paid in full and the deed was scheduled for delivery. Even if Fisher could have delivered good title, however, he could not have changed the characteristics of the land itself to make the land perkable when it clearly was not. Because Fisher had misrepresented that the land was perkable, and because this affected the value of the land, any possible intention of Fisher's to cure some of the problems that the buyers encountered does not ameliorate Fisher's guilt. *See Imes, supra* (holding that defendant committed theft by deception when he mortgaged the same property to several people without disclosing the existence of prior mortgages; whether the defendant intended to pay off some of the prior mortgages did not negate the intent to deceive the victims and deprive the victims of their property).

Fisher also maintains that the evidence was insufficient to support his convictions because "deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." 18 Pa.C.S. § 3922(a)(1). However, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, we find that Fisher's failure to deliver good title to the land in question was not the only basis for the conclusion that he intended to deceive the purchasers into buying this land. Rather, we find support for his convictions in his failure to inform the buyers that the property would not pass a perk test, his failure to perform the contracted-for perk tests, his failure to construct the shell homes as required to under certain of the relevant contracts, and his repeated failures to return owed money to his dissatisfied customers. Thus, we conclude that the evidence is sufficient to support Fisher's convictions for theft by deception. *See, Lawson, supra* (evidence was sufficient to support theft by deception conviction where victim testified that she believed defendant's assurances that she would receive $30,000 payment and relied upon these assurances when giving defendant, a stranger, $16,000 as security for the $30,000); *Commonwealth v. Edwards*, 399 Pa.Super. 545, 582 A.2d 1078 (1990), *appeal denied*, 529 Pa. 640, 600 A.2d 1258

(1991) (evidence was sufficient to support conviction of theft by deception where defendant obtained funds from the Urban Local Development Corporation to begin redevelopment project and, instead, used the funds to pay off old debts).

■ Fisher was also convicted of forgery. The Pennsylvania Crimes Code defines forgery as follows:

(a) **Offense defined.**—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority[.]

18 Pa.C.S. § 4101(a). Thus, the Commonwealth must prove that there was a false writing, that the instrument was capable of deceiving, and that the defendant intended to defraud. *Commonwealth v. Dietterick*, 429 Pa.Super. 180, 631 A.2d 1347 (1993), *appeal denied*, 538 Pa. 608, 645 A.2d 1312 (1994).

■ Here, the Commonwealth presented the testimony of John Beal, a potential buyer, who stated that the signature on the back of a check that he had given to Fisher for the purchase of land was not his own, and that he never gave anyone permission to sign his name on the check. N.T., December 8, 1993, at 36–37. In addition, Ann Panico, another buyer, testified that she had given Fisher a check, which he promised not to cash, dated August 21, 1985 as security on a house that Fisher was to build for her. In November 1988, after Panico had lost track of the check, it was processed by her bank with the date altered from 1985 to 1988. N.T., December 7, 1993, at 65–72. Another potential buyer, Kenneth DeFelice, testified that he and his wife had given Fisher a check for $100 as a binder on a piece of property and, the next day, changed their minds and requested a return of their check. Fisher told them that he tore up the check and threw it away. One year later, the check was cashed, with the date altered from 1987 to 1988. *Id.* at 180–85. Finally, George Reed testified that he had given Fisher two checks at a closing on a property in 1986. Subsequently, Reed discovered that there was a problem with the title to the property and stopped

payment on these two checks. In 1988, after the stop payment orders had expired, the checks were presented for payment with the date changed from 1986 to 1988. N.T., December 6, 1993, at 41–49. In each of these instances, we find that the evidence established that Fisher obtained money from his victims by intentionally altering a check to his benefit. Thus, we conclude that the evidence was sufficient to support Fisher's convictions for forgery.

Fisher was also convicted of one count of corrupt organizations. In order to convict a person under this statute, the Commonwealth must establish that the defendant, associated with an enterprise engaged in commerce, conducted the affairs of that enterprise with a pattern of racketeering activity. 18 Pa.C.S. § 911(b)(3). Fisher maintains that the corrupt organizations statute was not intended to encompass his activities, citing *Commonwealth v. Bobitski,* 534 Pa. 310, 632 A.2d 1294 (1993). In *Bobitski,* the defendant, who was responsible for awarding construction contracts for his employer, solicited bribes from various contractors. The trial court dismissed the corrupt organizations charges, and the Commonwealth appealed. In affirming the dismissal of these charges, the Pennsylvania Supreme Court noted that the legislature included in the corrupt organizations statute a lengthy preamble containing findings of fact which set forth the purpose and intended scope of the act. The court found that the express intent of the statute "was to prevent infiltration of legitimate businesses by organized crime." *Id.* at 314, 632 A.2d at 1296. Thus, the court concluded that

> [i]t was not the intent of the General Assembly to use this particular statute to enhance the punishment of an 'organized' criminal. A defendant who commits a series of methodical crimes is neither a natural nor an obvious target of the corrupt organizations statute. There are no facts alleged which lift the conduct of this particular white collar criminal out of the ordinary class of white collar criminals and make him appear to be part of the 'sophisticated,

diversified, and widespread phenomenon' defined in the statute as organized crime. *See,* 18 Pa.C.S. § 911(a)(1). *Id.* at 315, 632 A.2d at 1296–97.

█ Similarly, in the instant case, we find that Fisher is not the kind of criminal that the legislature intended to target with the corrupt organizations statute. There is no evidence that Fisher is a member of organized crime as that term is commonly understood. Rather, Fisher committed a series of methodical crimes which, in another context, could be described as racketeering activity. Thus, we are constrained to conclude that Fisher's conviction of corrupt organizations must be vacated. *Id. See also Commonwealth v. Besch,* 544 Pa. 1, 674 A.2d 655 (1996) (holding that intent of corrupt organizations statute is determined by preamble to statute and, accordingly, precludes applicability to drug dealers because the drug-dealing enterprise was not connected to a legitimate business; statute is only indicated when organized crime elements infiltrate a legitimate commercial activity).

█ Fisher's next contention is that the trial court erred in permitting certain irrelevant and immaterial evidence to be presented to the jury. Specifically, Fisher maintains that the trial court erred in admitting evidence that relates to uncharged criminal conduct, his Bahamas driving license, a questionable deed, and testimony regarding liens and encumbrances on the properties. "[T]he admissibility of evidence is a matter addressed solely to the discretion of the trial court and may be reversed only upon a showing that the court abused its discretion." *Commonwealth v. LaCava,* 542 Pa. 160, 174, 666 A.2d 221, 227 (1995).

Fisher asserts that the Commonwealth should not have been permitted to read an "Assurance of Voluntary Compliance" into evidence. This document, dated May 23, 1983, contains a series of agreements between Fisher, the Attorney General, and the Bureau of Consumer Protection, whereby Fisher agreed, among other things, to refrain from selling property that he did not own, to return any down payments when required to do so, and to keep down payments in

separate, interest-bearing accounts. The document states that it is not to be considered an admission of guilt for any purpose. Fisher maintains that the Commonwealth introduced this evidence merely to establish Fisher's prior bad acts and the probative value of this evidence was greatly outweighed by its prejudicial effect.

We agree that, generally, evidence of prior bad acts is inadmissible unless it comes under a recognized exception and the need for the evidence outweighs the potential prejudice. *Commonwealth v. Schwartz,* 419 Pa.Super. 251, 615 A.2d 350 (1992), *appeal denied,* 535 Pa. 617, 629 A.2d 1379 (1993). "The recognized exceptions justifying admission of prior bad acts are those that tend to establish motive; intent; absence of mistake. or accident; a common scheme, plan or design; or the identity of the person charged with the commission of the crime." *Id.* at 263, 615 A.2d at 356. *See also Commonwealth v. Taylor,* 448 Pa.Super. 238, 671 A.2d 235 (1996). Here, the Commonwealth asserted at trial that the purpose behind the use of this document was limited to establishing Fisher's knowledge that his actions were wrong. After the paragraphs in question were read to the jury, the court cautioned the jury that Fisher made no admissions of guilt in this document, and instructed the jury not to infer that Fisher was guilty of the current charges based upon this document. N.T., December 13, 1993, at 116–17. After review, we agree with the trial court that this evidence was properly admitted to establish Fisher's intent to defraud and the absence of any mistake or accident. *See Commonwealth v. Atwood,* 411 Pa.Super. 137, 601 A.2d 277 (1991), *appeal denied,* 530 Pa. 638, 607 A.2d 249 (1992) (concluding that testimony that defendant accused of theft by deception had written a bad check in payment of amounts loaned to him was admissible even though he was not charged with theft regarding that transaction). In addition, the court's cautionary instruction leads us to conclude that any prejudice possibly encountered by the admission of this testimony was minimal. *See Commonwealth v. Scarfo,* 416 Pa.Super. 329, 611 A.2d 242 (1992), *appeal denied,* 535 Pa. 633, 631 A.2d 1006 (1993)

(holding that limiting instruction was adequate when it was given immediately after newspaper article was read to the jury, and stated that the article was not offered for the truth of its contents but was intended to show that publicity had occurred). Thus, the court did not abuse its discretion in admitting this evidence.

Fisher also claims that the court erred in admitting the testimony of a dissatisfied buyer, Muriel Pagan, who testified that she had not signed a deed for conveyance to a Mr. and Mrs. Gaglione. Fisher was not charged with forging Pagan's signature on this deed; thus, he contends that this is inadmissible evidence of prior bad acts. However, we find that this evidence is relevant to establish the common scheme that Fisher employed in the fraudulent transactions. In addition, because of the overwhelming amount of evidence against Fisher, the admission of this evidence will not be considered to be prejudicial. *Commonwealth v. Norris,* 498 Pa. 308, 317, 446 A.2d 246, 250 (1982). Thus, we conclude that the admission of this testimony was not an abuse of discretion. *Taylor, supra.*

As for his Bahamas drivers license, Fisher maintains that its admission amounted to inadmissible evidence of prior bad acts; namely, use of an alias on the license which represented deception of a foreign government. We find this contention to be completely meritless. This license was relevant to show that Fisher (whose picture was on the license) often used the name "Charles Balogh." It established Fisher's *modus operandi,* and we conclude that it was more probative than prejudicial. *Norris, supra.* Thus, it was not an abuse of discretion to admit this evidence. *Atwood, supra.*

Fisher also claims that a deed from M. Foerster to Charles Balogh was inadmissible because it was irrelevant. Once again, however, because of the testimony from Fisher's secretary that she observed him sign the name "M. Forester," this was relevant evidence. The trial court stated, and we agree, that this evidence "established Fisher's practice of keeping property out of his own name and also showed the

victims' difficulty in holding [Fisher] accountable for his transactions." Trial Court Opinion, dated October 23, 1995, at 12. Thus, it was not an abuse of discretion to admit this evidence.

Lastly, Fisher contends that the evidence regarding the liens and encumbrances on the properties offered by a title search expert was irrelevant and, thus, inadmissible, because Fisher did not have to provide the buyers with good and marketable title until the transfer of the deed and the making of full payment on the property. After review, we conclude that the expert's testimony was relevant to establish that Fisher's representations regarding his ownership of the land were false and to establish that his representations that certain lots were free and clear of any encumbrances were false. Fisher's misrepresentations were an essential part of the crime of fraud by deception. *Grife, supra.* Thus, the court did not abuse its discretion in admitting this testimony.

Fisher next asserts that the trial court erred by failing to dismiss some of the charges based upon the expiration of the statute of limitations. The applicable period of limitations is five years for the crimes of forgery and theft. 42 Pa.C.S. § 5552(b)(1). Because Fisher failed to correct his victims' false impressions concerning the value of their properties, the statute of limitations does not begin to run until the victims discovered the deceptions, i.e. until they stopped making payments on the property or take action for a return of their money. The relevant conduct in this case is analogous to that which constitutes criminal conspiracy, which, for purposes of the statute of limitations, can be a continuing offense. *See Commonwealth v. Volk,* 298 Pa.Super. 294, 305, 444 A.2d 1182, 1187 (1982) ("[A]ny conspiracy that is renewed by repetitions may be prosecuted at any time within two years after the commission of the last offense."). Fisher fails to acknowledge that he continued to deceive the victims long after the initial signing of the contracts to purchase land and the contracts to do the perk tests. Many victims made payments for several months and accepted his excuses for non-performance. Thus, we conclude that the prosecution on each count must com-

mence within five years from the date of Fisher's last deception relating to that count.

The complaint against Fisher was filed on February 18, 1992. Thus, any count relating to a victim that Fisher deceived after February 18, 1987 will be considered to be timely filed. In count 2, the victim made payments on her property until March 1987. In count 12, the victim discovered the fraud and demanded a return of his money on August 1, 1987. In count 18, the victim terminated the contract with Fisher in March 1987. In count 45, the victim purchased land from Fisher in 1986. However, she never received her deed to the property, and she attempted to discuss with Fisher the record ownership of the property and a refund of her money within the limitations period. Counts 28, 31, 32, 33, 35, 38, and 39 all relate to Fisher's failure to perform perk tests. Although the victims paid for these tests in 1986, Fisher successfully concealed the fact that the tests were never going to be done until warm weather arose in the spring of 1987. The continuing nature of the deception in all of these cases leads us to conclude that Fisher's claim that these charges are barred by the statute of limitations is meritless. Thus, the court did not err in failing to dismiss these charges.

Fisher next contends that the trial court erred when it denied his requested jury instructions. In reviewing a jury charge, the instructions delivered must be read and considered as a whole. *Commonwealth v. Ahlborn,* 441 Pa.Super. 296, 657 A.2d 518 (1995). "[T]he trial court's jury instruction will be upheld if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberations." *Id.* at 300, 657 A.2d at 520.

Fisher maintains that the court should have instructed the jury that it could not convict him of fraud by deception based upon any misrepresentations concerning the existence of liens or encumbrances on the property at the time of the signing of the sales agreement. However, after a review of the relevant portion of the instruction given by the trial court, we are convinced that the crime of fraud by deception is fully

and accurately set forth.  N.T., December 20, 1993, at 45–51. Accordingly, this contention is also meritless.

Finally, Fisher contends that the court erred in imposing a manifestly harsh and unreasonable sentence.  Fisher claims that the court (1) improperly focused upon the severity of the offenses;  (2) improperly ignored Fisher's attempts at restitution;  and (3) improperly failed to consider Fisher's age and prior criminal history.  Finally, Fisher claims that the court's imposition of consecutive sentences on each conviction resulted in an unreasonably harsh and manifestly excessive sentence.  We note that our review of these matters is hampered by Fisher's failure to include in the certified record the transcript of the sentencing hearing.  However, because we have found that Fisher's conviction of corrupt organizations must be vacated, and this disposition may alter the trial court's sentencing scheme, it is necessary to remand the matter to the trial court for reconsideration of Fisher's sentence.  *Commonwealth v. Rodriguez,* 416 Pa.Super. 456, 611 A.2d 305 (1992);  *see also Commonwealth v. Goldhammer,* 512 Pa. 587, 517 A.2d 1280 (1986), *cert. denied,* 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987).  Accordingly, we need not consider Fisher's claims regarding his sentence.

The judgment of sentence on the corrupt organizations conviction is **VACATED,** and in all other respects the judgment of sentence is **AFFIRMED.**  Case **REMANDED** for resentencing.  Jurisdiction **RELINQUISHED.**