J-A23034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CONNIE BARLOW, | : | |
| | : | |
| Appellant | : | No. 1793 WDA 2018 |

Appeal from the Judgment of Sentence Entered November 19, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015831-2017

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED NOVEMBER 21, 2019**

Connie Barlow ("Barlow") appeals from the judgment of sentence entered following her convictions of one count of theft by deception, and three counts of forgery.[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual background as follows:

> [In February 2017, Barlow] was a member of the Hill District Federal Credit Union ("Credit Union").  The Credit Union is located in the Hill District section of the City of Pittsburgh[,] where the average income of its members is roughly $16,000 to $20,000 per year.  Accordingly, when a member makes a deposit over $2,000.00, Richard Witherspoon ["Witherspoon"], the chief executive officer of the [C]redit [U]nion, is notified so that he may monitor such deposits.
>
> On February 6, 2017, [Barlow] made three check deposits into one of the accounts she held at the Credit Union[,] totaling

---

[1] *See* 18 Pa.C.S.A. §§ 3922(a)(1), 4101(a)(3).

$6,417.90. On February 10, 2017, [Barlow] withdrew $4,600.00 from this account. Shortly thereafter, [Barlow] made transfers in the amounts of $200.00 and $1,400.00 from the account and moved the remaining money into another account she held with the Credit Union. [Barlow] made these withdrawals and transfers prior to the checks "clearing." On February 14, 2017, [] Witherspoon learned that the checks were fraudulent.

[] Witherspoon tried, without success, to contact [Barlow] on many occasions in an attempt to resolve the situation. [Barlow] alleges the checks were mailed to her as a result of work she performed through her business, AWB Remodel and Renovations. [Barlow] alleges the work performed was the result of three separate, local jobs in the neighborhoods of Mount Lebanon, Ambridge and South Park. However, the three checks for payment for those jobs originated, without any credible explanation, out of Santa Ana, California; Vienna, Virginia; and Colquill, Georgia. Furthermore, Detective Brittany Miles [("Detective Miles")] testified that she was never able to contact any of the alleged signatories/distributors of the checks.

Following [Barlow's] trial, she was sentenced to two years [of] probation at each count[,] to run concurrently. On December 19, 2018, [Barlow] filed a [timely] Notice of Appeal, and on January 25, 2019, [she] filed her [Pa.R.A.P. 1925(b)] Concise Statement of Matters Complained of on Appeal.

Trial Court Opinion, 2/27/19, at 1-2.

On appeal, Barlow raises the following questions for our review:

[1.] Under Pennsylvania's forgery statute, the Commonwealth must show that a writing has been unlawfully altered or presents a writing that wrongly purports to be authorized by another. [] Witherspoon failed to identify why the three checks cashed by [] Barlow with the Credit Union ultimately bounced. Given the absence of testimony that the checks were defective, did the Commonwealth present sufficient evidence to find [that] each of the three checks cashed by [] Barlow were forged?

[2.] In part, Pennsylvania's forgery statute requires an intent to defraud another by uttering a writing known to be forged. Did the Commonwealth present sufficient evidence of intent[,] given the lack of unusual or suspicious actions by [] Barlow and her

consistent explanations that she received the three checks for work done through her business?

[3.] Pennsylvania's theft by deception statute is premised on the creation or reinforcement of a false impression. [] Witherspoon failed to identify why the three checks cashed by [] Barlow with the Credit Union ultimately bounced. Given the absence of testimony that the checks were defective, did the Commonwealth present sufficient evidence to establish that any of the three checks created or reinforced a false impression?

[4.] In part, Pennsylvania's theft by deception statute requires an intent to obtain or withhold property of another by deception. Did the Commonwealth present sufficient evidence of intent[,] given the lack of unusual or suspicious actions by [] Barlow and her consistent explanations that she received the three checks for work done through her business?

[5.] Whether [] Witherspoon's testimony concerning fraudulent banking transactions went beyond the scope of his admitted expertise in banking regulations or credit union operation?

Brief for Appellant at 6 (issues reordered). We will address Barlow's first four issues together, as they all challenge the sufficiency of the evidence supporting her convictions.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder[,] unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly

circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

In her first issue, Barlow alleges that the evidence was insufficient to prove that the checks that she had deposited were forged. *See* Brief for Appellant at 19-22. Barlow argues that (1) the Commonwealth did not present testimony from the check issuers; (2) Witherspoon testified that he could not remember whether the checks were returned as fraudulent because the check issuers had insufficient funds, or for some other reason; and (3) the photocopies of the checks submitted at trial did not contain any markings indicating that they were returned as fraudulent. *Id.* at 20-21. According to Barlow, there are numerous, non-fraudulent reasons why the checks could have been returned, and the Commonwealth's evidence at trial did not foreclose those possibilities. *Id.* at 21.

In her second issue, Barlow alleges that the evidence was insufficient to prove that she knew the checks were forged, and that she intended to deceive the Credit Union. *Id.* at 25-31. Barlow argues that her testimony, that she had legitimately received the checks in exchange to work, was uncontradicted at trial by the Commonwealth. *Id.* at 25. According to Barlow, her actions, following her deposit of the checks, and the fact that the checks originated

- 4 -

from out-of-state banks, do not prove that she knew the checks were forged.

*Id.* at 27-31.

> Section 4101(a) states that
>
> [a] person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
>> (1) alters any writing of another without his authority;
>>
>> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
>>
>> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S.A. § 4101(a). "We may look to the totality of the defendant's conduct to infer fraudulent intent. Circumstantial evidence is sufficient to establish the defendant's knowledge that the document is a forgery." *Commonwealth v. Green*, 203 A.3d 250, 253 (Pa. Super. 2019).

In its Opinion, the trial court concisely addressed Barlow's first two claims as follows:

> [Regarding Barlow's first claim,] Witherspoon testified as to what occurs when a check is deposited with the Credit Union and the process by which the check is then cleared by the corresponding bank. In this instance, the checks deposited by [Barlow] were sent by the Credit Union to PNC Bank for clearance. PNC Bank returned the check to the Credit Union indicating that the checks were fraudulent. Additionally, Detective [] Miles testified that she was unable to contact any of the alleged distributors of the checks. … Therefore, based upon the totality of the circumstances, this [c]ourt believes the Commonwealth has

carried [its] burden in proving that the checks deposited by [Barlow] were altered and/or unauthorized by another.

… [Regarding Barlow's second claim,] Witherspoon testified that out-of-state checks take additional processing time for clearance. Additionally, [] Witherspoon explained the federal regulation known as Regulation CC[,[2]] which requires the credit union to make deposited funds available to the depositor unless a financial institution has some apprehension about the check that has been deposited. More specifically, pursuant to Regulation CC, the Credit Union is required to make the funds available before clearance from a financial institution. This [c]ourt does not find it a coincidence that [Barlow] deposited three fraudulent out-of-state checks into her account with the Credit Union only to withdraw the majority of that money days later. Furthermore, [Barlow] shortly thereafter transferred the funds into a separate account. Additionally, this [c]ourt did not find [Barlow's] testimony with respect to how she came into possession of the checks or the work she allegedly performed in exchange for the checks credible or persuasive. This [c]ourt was unpersuaded by [Barlow's] claims that she performed work for three individuals locally and received three out-of-state checks for payment of that work[— t]hree out-of-state checks which were all deposited on the same day, and which were all returned by the bank after undergoing a clearance process as fraudulent. Furthermore, [] Witherspoon testified that he contacted [Barlow] several times to inquire about the deposits and attempt to resolve the issue, all of which proved to be unfruitful. Accordingly, this [c]ourt found that [Barlow] knew the checks were fraudulent and/or deposited the checks with the intent to defraud the Credit Union.

Trial Court Opinion, 2/27/19, at 4-5 (footnote added). The record supports the trial court's findings in this regard. We therefore agree with the trial court's sound rationale and determination, and affirm on this basis in rejecting Barlow's first and second claims. *See id.*

---

[2] *See* 12 C.F.R. §§ 229.1-229.60.

In her third claim, Barlow alleges that the evidence was insufficient to prove that she had created or reinforced a false impression to support her conviction for theft by deception. **See** Brief for Appellant at 22-24. Similar to her argument regarding her conviction for fraud, Barlow argues that there was no evidence establishing that the checks were fraudulent. **Id.** at 23. According to Barlow, without evidence that the checks were fraudulent, the evidence was insufficient to prove that she had created or reinforced a false impression. **Id.** at 23-24.

In her fourth claim, Barlow alleges that the evidence was insufficient to prove that she had intentionally deceived the Credit Union, to support her conviction for theft by deception. **Id.** at 31-36. Barlow argues that the checks contained no facial defects indicating that the checks were invalid, and her actions following her deposit of the checks does not prove she knew the checks were invalid. **Id.** at 33-36.

Section 3922(a)(1) states that

[a] person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

18 Pa.C.S.A. § 3922(a)(1). "Deception occurs when that person creates or reinforces a false impression regarding the value of property…."

*Commonwealth v. Fisher*, 682 A.2d 811, 813 (Pa. Super. 1996). "To obtain a conviction of theft by deception, the Commonwealth must demonstrate the presence of a false impression and that the victim relied on that impression." *Commonwealth v. Thomas*, 684 A.2d 1085, 1086 (Pa. Super. 1996).

In its Opinion, the trial court concisely addressed Barlow's third and fourth claims as follows:

> [Barlow] testified on her own behalf as to how she came into possession of the three fraudulent checks. [Barlow's] testimony was neither persuasive nor credible. [Barlow] was unable to provide consistent details, names or addresses for the people she allegedly did the work for in exchange for these fraudulent checks. [] Witherspoon testified that he contacted [Barlow] the day after the checks were deposited to inquire where she obtained such a large deposit. The story [Barlow] gave that day to [] Witherspoon changed at a later date. [] Witherspoon testified that he contacted [Barlow] several times regarding the fraudulent checks in an attempt to resolve the issue, but [Barlow] never returned the money she withdrew after being advised the checks she had deposited were fraudulent. The Commonwealth also presented testimony from Detective [] Miles who testified that she was unable to contact the alleged distributors of the checks during the course of her investigation into this matter.

Trial Court Opinion, 2/27/19, at 3. The trial court found that this claim lacked merit. *See id.* at 6. We agree with the trial court's sound rationale and determination, and affirm on this basis in rejecting Barlow's third and fourth claims. *See id.*

In her fifth claim, Barlow alleges that the trial court erred in permitting Witherspoon to give expert testimony on fraudulent banking schemes. *See* Brief for Appellant at 37-40. Barlow argues that this testimony was beyond Witherspoon's area of expertise. *Id.* at 38-40. Barlow points out that

Witherspoon was admitted as an expert in "banking regulations or credit union operation." *Id.* According to Barlow, the Commonwealth failed to establish how Witherspoon's expertise in "banking regulations or credit union operation" made him an expert on fraudulent banking schemes. *Id.*

In its Opinion, the trial court concisely addressed Barlow's fifth claim as follows:

> [] Witherspoon testified at [] trial as to his 30 plus years' experience with the Credit Union and the experience he has had with members withdrawing money from deposited checks before the checks clear. [] Witherspoon testified that, in his experience, there can be several reasons why a check deposited by a member may not pass the clearance process, such as a check returned for insufficient funds, someone made an error in their checkbook[,] or the distributor of the check stopped payment on the check. Additionally, [] Witherspoon explained that he has observed members come to the Credit Union to deposit checks which they received in the mail with a letter stating they won a sweepstakes. Furthermore, [] Witherspoon testified that, in his experience, when a check has been returned as counterfeit, oftentimes it means that someone got ahold of another's bank information and/or checks. That person sends the checks to multiple people in hopes that they will deposit the check. [] Witherspoon testified that he has copies of letters that are sent to individuals. The letters are sent with the counterfeit checks and request that the depositor send back a nominal amount of money as a "processing fee[."] [] Witherspoon testified within his scope of expertise as well as within the scope of his experience working at the Credit Union for the past 30 years. Accordingly, [Barlow's] fifth issue is without merit.

Trial Court Opinion, 2/27/19, at 5-6. We agree with the trial court's sound rationale and determination, and affirm on this basis in rejecting Barlow's fifth claim. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date:  11/21/2019