J-S43038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLENN DAVID MCGOGNEY | : | |
| | : | |
| Appellant | : | No. 1088 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001985-2019

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 14, 2023**

Appellant Glenn David McGogney appeals from the judgment of sentence imposed after a jury convicted him of two counts of theft by deception.[1] Appellant argues that his convictions were barred by the applicable statute of limitations. We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> At trial, [George and Frances Fetchko] testified about retaining [A]ppellant to represent the estate of their son [Nicholas Fetchko], who died in an automobile accident on November 20, 2010, at the age of 28. They detailed [A]ppellant's deceptions regarding the insurance claims connected with the death of Nicholas Fetchko.
>
> The Fetchkos had known [A]ppellant for over forty (40) years. Mrs. Fetchko and [A]ppellant's wife are first cousins. [A]ppellant and his wife paid a condolence call at the Fetchkos' home two weeks after their son's funeral, and [he] told them that he would

---

[1] 18 Pa.C.S. § 3922(a)(1).

"handle it" (the insurance claims) for them. No power of attorney or any documents were signed by the Fetchkos authorizing [A]ppellant to sign their names. During the next five years, [A]ppellant came up with excuses for why the litigation had not been settled, including that [A]ppellant was "fighting with the IRS."

[A]ppellant eventually told the Fetchkos that they would be getting their money in "two weeks. And two weeks would go by and two weeks turned into years." Once the Fetchkos realized something was wrong, Attorney Dean Berg was contacted to investigate the status of their claims. Attorney Berg was retained in 2015, and recovered $330,371.45 from [A]ppellant in 2016.

Attorney Berg had known the Fetchkos for many years and had done "mostly estate work" on their behalf. Once retained in this matter, Attorney Berg reached out to [A]ppellant by phone calls and letters. [A]ppellant informed Attorney Berg that the claims had been settled, but again used the IRS as the reason the funds were not distributed. Attorney Berg's first letter to [A]ppellant was sent on July 31, 2015, and when the settlement funds were still not forwarded by [A]ppellant, Attorney Berg sent a second letter on September 17, 2015. [A]ppellant responded with correspondence from the IRS dated June 16, 2015, demanding payment, but that correspondence refers to [A]ppellant, not the Fetchkos. Finally, Attorney Berg sent a third letter to [A]ppellant dated December 2, 2015, explaining to him that the IRS excuse appeared to be bogus, and the "estate of Nicholas T. Fetchko had nothing to do with your personal finances, and/or business interests." Attorney Berg also expressed concerns that the proceeds of the settlement may be in jeopardy due to reasons including [A]ppellant's recent trip to Las Vegas. A series of e-mails were also introduced between [A]ppellant and Attorney Berg, with [A]ppellant promising the checks would be forthcoming, but using the IRS cover story and then his medical condition to explain the delay. [Appellant] also implied that some of the funds would be obtained from his "Royal Alliance" retirement account. Eventually, [A]ppellant provided a cashier's check, [which was] not from [A]ppellant's IOLTA account, in the sum of $330,371.45 on January 29, 2016. The check was made out to Attorney Berg, who deposited it in his IOLTA account. [Attorney Berg] then paid the Fetchkos from that trust account.

The Commonwealth's last witness, and the last witness at trial, was Kevin Nelson, who was employed by Erie Insurance Group

- 2 -

(hereinafter Erie). He worked at Erie as a property and casualty records examiner (*i.e.*, a custodian of the records). One of the documents identified at trial was a letter sent by [A]ppellant to an employee of Erie dated January 11, 2011. The letter requests checks to be forwarded to [A]ppellant's office "as expeditiously as possible," payable to George M. Fetchko and Appellant. The letter also contained releases signed by George M. Fetchko. Mr. Nelson explained the breakdown of the funds disbursed, with a total amount of $510,000.00. Checks were issued to [A]ppellant at his address on January 17, 2011, and January 20, 2011. All of the checks were cashed.

Trial Ct. Op., 9/19/22, at 3-5 (footnotes omitted and formatting altered).

[A]ppellant, without the knowledge of the Fetchkos, settled their various claims with Erie Insurance in 2011 for $510,000.00, but [he] did not distribute the proceeds. Instead, he kept the settlement funds as his own until the Fetchkos hired a second lawyer, Attorney Dean Berg, to investigate the status of the litigation. Once [A]ppellant's deception was uncovered, [A]ppellant, on January 29, 2016, delivered a cashier's check in the amount of $330,371.45 to Attorney Berg's office. [A]ppellant, having no shame, decided to keep $170,343.00 for his fee.[FN3] At the time of sentencing, that sum was ordered to be paid to the Fetchkos as restitution.

> [FN3] [A]ppellant had no fee agreement with the Fetchkos, and [Appellant] misled [the Fetchkos] regarding his fee for representing their son's estate.

*Id.* at 1-2 (some formatting altered).

On February 16, 2022, a jury found Appellant guilty of two counts of theft by deception, which were each graded as first-degree felonies. Verdict Slip, 2/16/22; Order, 3/29/22. On March 29, 2022, the trial court sentenced Appellant to an aggregate term of twenty-four to sixty months of incarceration in a state correctional institution. Order, 3/29/22; N.T. Sentencing, 3/29/22, at 74; 164-165.

Following sentencing, Appellant's private counsel, Gavin Holihan, Esq., was permitted to withdraw without objection from Appellant, and Appellant filed a timely *pro se* notice of appeal. On April 22, 2022, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed a timely *pro se* Rule 1925(b) statement.

On June 9, 2022, Appellant filed a petition seeking court-appointed counsel, and on June 27, 2022, the trial court conducted a **Grazier**[2] hearing. Following the hearing, the trial court appointed Matthew Rapa, Esq., to represent Appellant, and the trial court provided Appellant sixty days in which to file a counseled supplemental Rule 1925(b) statement. Appellant filed a timely supplemental Rule 1925(b) statement on August 26, 2022, and the trial court filed its Rule 1925(a) opinion on September 19, 2022.

On appeal, Appellant raises the following issue:

Whether Appellant's convictions of two counts of theft by deception were barred by the statute of limitations when all elements of the crime were completed in January 2011, but criminal proceedings were not initiated until eight years later on April 10, 2019?

Appellant's Brief at 4 (formatting altered).

Appellant contends that the crime of theft by deception is not a continuing offense, and therefore, the elements of his theft-by-deception charges were completed in January of 2011. Appellant's Brief at 12-13. On

---

[2] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

- 4 -

this basis, Appellant asserts that the five-year statute of limitations expired in January of 2016. *Id.* at 13. Appellant claims that because the Commonwealth did not file charges until April 10, 2019, the prosecution was barred due to the expiration of the statute of limitations. *Id.* at 17-19.

The Commonwealth responds that Appellant's thefts by deception did not end in January 2011, but rather that is when the crimes began. Commonwealth's Brief at 13-14. The Commonwealth contends that Appellant held himself out as the Fetchkos' lawyer and received the funds from Fetchkos' settlement in 2011. The Commonwealth argues that Appellant's thefts by deception continued for the five-year period between January 2011 and January 2016, while Appellant continued to withhold the Fetchkos' settlement funds through deception. *Id.* at 14. Specifically, the Commonwealth contends that Appellant's deception was exhibited through Appellant's continued action of withholding the Fetchkos' money by creating and failing to correct the false impression that Appellant had not yet received the settlement funds or that he could not distribute the money to the Fetchkos due to intervention by the IRS. *Id.* at 15-19. The Commonwealth asserts that Appellant's crimes continued until he finally delivered the funds to the Fetchkos in January of 2016. *Id.* at 19.

"A question regarding the application of the statute of limitations is a question of law." *Commonwealth v. Succi*, 173 A.3d 269, 279 (Pa. Super. 2017) (citation omitted). Accordingly, "our standard of review is *de novo* and scope of review is plenary." *Id.* (citation omitted). "Statutes of limitations

are of course liberally construed in favor of the defendant and against the Commonwealth." *Id.* (citation omitted).

As stated, Appellant was convicted of two counts of theft by deception under 18 Pa.C.S. § 3922(a)(1). Theft by deception is subject to a five-year statute of limitations. 42 Pa.C.S. § 5552(b)(1). "An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the complicity of the defendant therein is terminated." 42 Pa.C.S. § 5552(d). The elements of theft by deception are as follows:

> A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> > (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

18 Pa.C.S. § 3922(a)(1).

This Court has held that where a defendant fails to correct his victim's false impression with respect to theft by deception, "the statute of limitations does not begin to run until the victims discovered the deception[.]" *Commonwealth v. Fisher*, 682 A.2d 811, 818 (Pa. Super. 1996). The *Fisher* Court further stated: "[t]he relevant conduct . . . is analogous to that which constitutes criminal conspiracy, which, for purposes of the statute of limitations, can be a continuing offense." *Id.* (citation omitted). Accordingly,

the ***Fisher*** Court concluded "that the prosecution on each count must commence within five years from the date of [the defendant's] last deception relating to that count." ***Id.***

As stated, Appellant asserts that his crimes were complete as of January of 2011. Appellant's Brief at 12-13. Further, Appellant claims that pursuant to the holding in ***Succi***, theft by deception is not a continuing offense, and Section 5552(d) does not apply to extend the statute of limitations. ***See id.*** We conclude that Appellant's argument lacks merit and that no relief is due.

Initially, we note that the facts in ***Succi*** were substantially different from the instant case. In ***Succi***, the defendant was convicted of twelve separate counts of theft by deception from separate victims, and these thefts occurred between June of 2005 and February 10, 2014, when a warrant was issued for Mr. Succi's arrest. ***Succi***, 173 A.3d at 272-279. Mr. Succi asserted that any thefts which occurred more than five years prior to February 10, 2014, when the warrant was issued, were barred by the five-year statute of limitations. ***Id.*** at 279-282. However, the trial court concluded that Mr. Succi engaged in a single continuing course of conduct under Section 5552(d) and that the statute of limitations had not expired on any of the crimes. ***Id.*** at 279-280. The trial court "found that the evidence established that [Mr. Succi] engaged in deceptive or fraudulent business practices and theft by deception throughout 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2013 and continued into 2014." ***Id.*** at 280 (citation omitted and formatting altered).

On appeal to this Court, Mr. Succi argued that his crimes were "intermittent, did not constitute a single, continuous act, and failed to show a repetitive pattern of behavior." *Id.* The *Succi* Court, applying *Fisher*, concluded that the continuing-conduct language from Section 5552(d) could not extend the statute of limitations under the facts of that case where there were multiple separate counts of theft and numerous victims over a period of nine years. *Id.* The *Succi* Court concluded that the statute of limitations could not be extended under Section 5552(d) to tack each of Mr. Succi's separate instances of theft from multiple victims together into a continuous criminal act from 2005 through 2014. *See Succi*, 173 A.3d at 280-81.

However, in the instant case, the only victims were the Fetchkos, and there was one continuous course of conduct where Appellant used deception to withhold funds that belonged to the Fetchkos. Pursuant to *Fisher*, Appellant's crimes were continuing offenses, and the statute of limitations did not begin to run until the Fetchkos discovered the deception in January, 2016, through the investigation of Attorney Berg. *Fisher*, 682 A.2d at 818.[3] Indeed,

---

[3] Moreover, Appellant's claim that the *Succi* Court ruled that theft by deception is not a continuing offense would cause *Succi* to directly conflict with the plain language of *Fisher*. We reiterate that the *Fisher* Court stated that theft by deception can be a "continuing offense." *Fisher*, 682 A.2d at 818. Further, *Succi* was a decision issued by a three-judge panel of this Court, and it is well settled that a three-judge panel is bound by *stare decisis* and cannot overrule prior decisions of this Court. *See, e.g., Commonwealth v. Crowley*, 605 A.2d 1256, 1257 (Pa. Super. 1992) (stating "precedent (*stare decisis*) requires [a three-judge panel of this Court] to adhere to a ruling of this Court until it is reversed either by our Supreme Court or an *en banc* panel of [the] Superior Court"). Accordingly, *Succi* cannot be construed in a manner that conflicts with or overrules *Fisher*.

- 8 -

Appellant engaged in deception to withhold money from the Fetchkos and continued to deceive the Fetchkos for years. The record reflects that Appellant received a total of $510,000.00 to settle the Fetchkos' claims. N.T., 2/16/22, at 15. Appellant received the $510,000.00 in separate checks dated January 17, 2011, and January 20, 2011, and Appellant cashed these checks. *See id.* at 15-27. Appellant then proceeded to deceive the Fetchkos by creating the false impression that he had either not received the funds or that he could not distribute the funds to the Fetchkos due to intervention by the IRS. *See* N.T., 2/15/22, at 16, 84, 91; *see also* Trial Ct. Op., 9/19/22, at 1-4. Appellant then withheld the funds through deception until the Fetchkos retained Attorney Berg in 2015. *See* N.T., 2/15/22, at 81-82. Attorney Berg first contacted Appellant on July 31, 2015, in an effort to investigate and attempt to collect the money that Appellant was withholding from the Fetchkos. *See id.* at 82. Appellant's deception, including the allegation that the IRS was preventing disbursement of the Fetchkos' money, began in 2012 and continued through December 17, 2015, when Appellant corresponded by email with Attorney Berg. *See id.* at 16, 84-87. On January 29, 2016, Appellant delivered a cashier's check in the amount of $330,371.45 to Attorney Berg's office. *See id.* at 20, 45, 107.

After review, we conclude that the elements of Appellant's crimes began in January of 2011, and continued through January 29, 2016, when Appellant ceased deceiving the Fetchkos and stopped withholding their money. *See Fisher*, 682 A.2d at 818 (holding that "the prosecution on each count must

commence within five years of [the] last deception relating to that count.").

It is undisputed that the Commonwealth charged Appellant on April 10, 2019.

*See* Complaint, 4/10/19. Therefore, the prosecution commenced thirty-eight

months after January 29, 2016, prior to the expiration of the five-year statute

of limitations.[4] For these reasons, we conclude that Appellant is due no relief.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2023

---

[4] In any event, even if we use July of 2015, the time at which the Fetchkos retained Attorney Berg, as the date Appellant last deceived the Fetchkos, or December 17, 2015, the date on which Appellant last emailed Attorney Berg alleging that the IRS prevented disbursement of the funds, the prosecution still commenced within five-years.