**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Leslie BREISCH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 3, 1998.

Filed Oct. 9, 1998.

---

Diana Woodside, Harrisburg, for appellant.

Robert W. Ferrell, Asst. Dist. Atty., Williamsport, for Com., appellee.

Before JOYCE and HESTER, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Leslie Breisch appeals from the judgment of sentence entered in the Court of Common Pleas of Lycoming County. We vacate the judgment of sentence and remand for a new trial.

On December, 18, 1996, Breisch was convicted of two counts of forgery, one count of theft, and one count of theft by receiving stolen property; the convictions stemmed from Breisch's unauthorized use of sixty-eight checks. The circumstances underlying this criminal case revolve around a quasi-marital relationship between Breisch and her longtime companion, Jeffrey Carey (Carey). The couple met in September of 1991 and began dating November of that same year. In December, the couple were engaged and continued to live together in Carey's Manhattan apartment. Breisch often used Carey as her last name; she referred to Carey's parents as her in-laws and they referred to her as their daughter-in-law.

At the time of their engagement, Carey was Vice President of his father's family-owned business, R.J. Carey Company (R.J.). R.J. financed renovations and construction work performed on Carey's New York apartment. In the fall of 1993 Breisch started working at R.J. as an accountant/bookkeeper. Carey's father also owned a real estate company (Carey Realty) and a maid service business (Express Maid). Express Maid was

partially financed by R.J and run exclusively by Carey.

In early 1994, Carey and his father had a falling out. As a result, Carey's salary was gradually reduced. The couple decided to transfer the operation of Express Maid from Carey to Breisch; this transfer was completed in September of 1994. At that same time, Carey was laid off from his position at R.J. No longer receiving any R.J. funds for the continuing renovation of his New York City apartment, Carey put his residence up for sale. At the same time Breisch purchased a house (with the intention that it would eventually be the couple's marital residence) and began renovating the property using the same contractors Carey had used for his apartment. R.J. had an account with a number of these contractors and the contractors often charged R.J directly for any completed work. Carey testified on cross-examination that he had approved Breisch charging such work to R.J. and that he often picked up items for the house and authorized charging the items on the company account. Carey anticipated that Breisch would reimburse the company for any expenses charged to R.J. In May of 1995, R.J. began refinancing and refinishing the New York City Apartment which Carey was unable to sell; Carey's father hired Carey to oversee this project and allowed Carey to reside in the apartment.

In June, 1995, Carey ended his relationship with Breisch. He did so when his parents informed him that Breisch was no longer employed by R.J. Carey Company due to the fact that she had been endorsing company checks with Carey's signature in order to fund her personal expenses. Specifically, Breisch used the checks, in part, to pay off credit card balances and the balance of a loan for a Jeep, to transfer funds to Express Maid, and to pay for refinishing and furnishing work on her house. Carey testified that he did not authorize any of these transactions.

After a jury trial, Breisch was sentenced to a term of incarceration of sixteen months to twelve years, with a suspended ten-year probationary sentence. Breisch was also ordered to make restitution to R.J. in the amount of $62,560.20. The trial court denied Breisch's post-trial motions. On appeal, Breisch presents the following issues for our consideration:

(1) Was Ms. Breisch deprived of the effective assistance of counsel by the failure of her attorney to:

(a) clearly advise Ms Breisch of her constitutional right to testify;

(b) request an instruction regarding a no adverse inference from appellant's failure to testify;

(c) present character evidence and other witnesses on her behalf prepared to testify to Ms. Breisch's reputation for probity; and

(d) object to permitting the jurors to take notes during the trial and refer to their notes during the deliberations?

(2) Did the trial court err in not granting the appellant's motion for a new trial in that [the] verdict was against the weight of the evidence?

Our standard of review when evaluating a claim of ineffective assistance of counsel is well settled. We presume that trial counsel is effective and place on the defendant the burden of proving otherwise. *Commonwealth v. Williams*, 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). We are first required to determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Johnson*, 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis. *Id.* Even if the underlying claim has merit, the appellant still must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the client's interests and, finally, that the ineffectiveness prejudiced his right to a fair trial. *Id.; Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

In her first issue on appeal, Breisch claims that trial counsel was ineffective for failing to adequately advise her of the right to testify and failing to allow her to testify on her own behalf at trial. It is well settled that the decision to testify on one's own behalf is

ultimately to be made by the defendant after full consultation with counsel. *Commonwealth v. Uderra*, 550 Pa. 389, 706 A.2d 334 (1998). In order to sustain a claim that counsel was ineffective for "failing to call the appellant to the stand," the appellant must demonstrate either: (1) that counsel interfered with his right to testify, or (2) that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. *Id.* Counsel is not ineffective where counsel's decision to not call the defendant was reasonable. *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471 (1998).

In *Commonwealth v. Neal*, 421 Pa.Super. 478, 618 A.2d 438 (1992), the defendant was convicted of involuntary deviate sexual intercourse and corruption of minors. On appeal, the defendant claimed that counsel was ineffective for failing to call him to the stand to testify at trial. Specifically, the defendant testified that during trial preparation, trial counsel never discussed with him his right to testify. *Id.* at 483, 618 A.2d at 440. Trial counsel admitted that it was possible that he never consulted with the defendant with regard to informing him of his right to testify. *Id.* at 483, 618 A.2d at 441. Furthermore, the defendant stated that he had no criminal history and that had he been informed of his constitutional right, he would have chosen to testify at trial. *Id.* at 483, 618 A.2d at 440–41.

Our court determined that trial counsel's failure to inform his client of the right to testify constituted interference with such right and, thus, the defendant's ineffectiveness claim had arguable merit. *Id.* Next, the superior court found that counsel offered no reason to justify why he did not put the defendant on the stand. "Moreover, in light of [the defendant's] testimony that he has no past criminal record that would be brought out during cross-examination," our court found that counsel had no reasonable basis designed to serve his client's interests. *Id.* at 484, 618 A.2d at 441. Finally, the superior court concluded that counsel's conduct prejudiced the defendant because the outcome of the case "turned primarily on the credibility of the victim." Therefore, the testimony that the defendant would have given would have rebutted the complainant's incriminating testimony and, as such, was considered essential defense testimony. *Id.* at 484–85, 618 A.2d at 441.

■ Unlike the defendant in *Neal*, we are convinced that Breisch was informed of her right to testify. Breisch and counsel indicated at the post-trial motion hearing that on several occasions they discussed Breisch testifying on her own behalf at trial, the manner in which she should answer any questions posed by opposing counsel, and the benefits and disadvantages of her testifying. Although Breisch may not have uttered the magic words, "I understand that I have the right to testify on my own behalf and I choose not to exercise such right," Breisch has not demonstrated that counsel failed to advise her of her right to take the stand. *Neal, supra.* Despite the fact that she was advised of her right to testify, we must still determine whether trial counsel offered Breisch unreasonable advice that impaired her ability to knowingly and intelligently decide to testify on her own behalf or whether counsel prevented Breisch from testifying. *Uderra, supra.*

■ Breisch claims that counsel did not give her a choice to testify and that she did not know until the defense rested that she was not going to be called to the stand. At this time, Breisch asserts that she "immediately reached up and tugged [on counsel's] shirt and asked him what ['the defense rests'] means." Breisch also contends that she led counsel to believe at all times that she wished to testify. Because it is the defendant's ultimate decision of whether he or she chooses to testify, and because such decision can only be made after full consultation with counsel, *Uderra, supra,* we find that this ineffectiveness claim has arguable merit. *Johnson, supra. Cf. Commonwealth v. Wallace*, 347 Pa.Super. 248, 255, 500 A.2d 816, 819 (1985) (trial counsel not ineffective where notes of testimony indicated that discussion took place during trial in which the defendant told the court that he was satisfied with his lawyer's advice not to take witness stand); *Commonwealth v. Mancini*, 340 Pa.Super. 592, 610, 490 A.2d 1377, 1386 (1985) (counsel not

ineffective where counsel discussed implications of taking the stand and defendant opted not to testify).

Having found arguable merit to Breisch's first ineffectiveness issue, we must next decide whether trial counsel presented a reasonable basis for his action. *Johnson, supra.* In the present case, trial counsel testified that he told Breisch that he felt the defense was in a good position and that her testimony was not necessary. Specifically, counsel advised Breisch that with effective cross-examination of the Commonwealth's main witnesses, the jury would have reasonable doubt as to her culpability. Accordingly, he chose not to call her to the stand. Moreover, counsel also expressed the fact that he doubted Breisch's capability of effectively testifying on her own behalf—he felt that she had the tendency to stray from questions posed to her. Despite this singular character flaw and counsel's "hunch" that the jury would acquit based on the Commonwealth's evidence, trial counsel could not point to any convincingly reasonable strategy in failing to call Breisch to the stand. In addition, the multitude of Commonwealth witnesses, while capable of presenting facts to prove the elements of the crimes that Breisch allegedly committed, were not concomitantly able nor obviously willing to present a defense for the defendant's case. Moreover, even effective cross-examination by defense counsel could not sufficiently bring to light and flesh out the sole defense to the crimes asserted by Breisch. Rather, the testimony that Breisch would have given was the sole opportunity to rebut the prosecution's incriminating testimony. *Neal, supra,* Accordingly, we find that counsel's actions were not reasonably designed to serve his client's interests. *Johnson, supra.*

Finally, we must determine whether counsel's decision to refrain from putting Breisch on the stand prejudiced her. *Pierce, supra.* Similar to the defendant in *Neal,* Breisch had no past criminal record; therefore, defense counsel should not have been concerned that any criminal history would have been brought out on cross-examination by the prosecution. *See Commonwealth v. Holloway,* 524 Pa. 342, 572 A.2d 687 (1990) (where defendant was incapable of being impeached through the introduction of *crimen falsi,* and where defendant's defense was that his confession was involuntary and that he was not present at the scene of the crime, defendant should have clearly testified at trial). Furthermore, Breisch's sole defense to the crimes for which she was charged was based on her belief that the Careys authorized her to charge expenses to the business. In fact, in order to obtain a forgery conviction, a critical element that the Commonwealth must prove is that the defendant intended to defraud.[1] *Commonwealth v. Fisher,* 452 Pa.Super. 564, 682 A.2d 811 (1996). Furthermore, the statutory definition of forgery states that "a person is guilty of forgery if, with the intent to defraud ..., the actor makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another **who did not authorize that act** ...." 18 Pa.C.S.A. § 4101(a)(2) (emphasis added).

It is clear that Breisch's anticipated testimony was critical to establishing her defense to the crimes charged. The Commonwealth's abundant evidence consisted of the testimony of over thirty witnesses; the prosecution's case was not one based solely upon circumstantial evidence. *Cf. Commonwealth v. Garrity,* 509 Pa. 46, 500 A.2d 1106 (1985) (counsel was not ineffective for choosing not to place defendant on the stand where Commonwealth's case consisted purely of circumstantial evidence and where young, naïve and unsophisticated defendant, by testifying and undergoing cross-examination could provide, from his own mouth, sufficient evidence to prove the Commonwealth's case or to take it to a jury exclusive of the disputed evidence).

The defense, on the other hand, called only two witnesses to testify at trial. The first defense witness, Agent Thomas Croft, was presented merely to create an issue as to Carey's credibility. The second defense witness, Shelly Bloom, was an office administrator at the R.J. Carey Company until January

---

1. The other elements of forgery are: (1) the false making of some instrument in writing; and (2) an instrument apparently capable of effecting fraud and working an injury to another. *Fisher, supra.*

of 1994. Bloom testified that she often cut company checks for Jeff Carey without the direct approval of Mr. Carey. She also stated that she often made transfers from R.J. Carey funds to Express Maid. In sum, the sparse testimony offered by the defense did not bring out Breisch's singular defense to the crimes for which she was charged— namely, the lack her of intent to defraud based upon her belief that her actions were authorized. Without question, Breisch was the most qualified person to offer such relevant evidence as to her relationship with the Careys, R.J. Carey Company, Express Maid, in order to put forth her defense of apparent authorization to use company funds for personal purposes. Accordingly, without such testimony, Breisch's case was severely prejudiced. *Neal, supra*; *Holloway, supra.* Finding counsel's actions prejudicial to Breisch, and, therefore, that counsel was ineffective, *Pierce, supra,* we reverse and remand for a new trial.

As a final note, we recognize that we do not come to this decision lightly; it is well established that counsel is presumed effective and that the reasonableness of the choice ultimately chosen by trial counsel may not be judged with the benefit of hindsight. The right to testify on one's own behalf, however, is a sacred right conferred upon citizens by our state and federal constitutions. So as not to overstep this court's function in future cases, we note that the instant case presents facts that entitle the defendant to a new trial. In order to uphold the deep-seeded purpose behind this right and the ultimate decision of whether to invoke this right, the case must be reversed and remanded. *See Commonwealth v. Fink*, 317 Pa.Super. 171, 463 A.2d 1140 (1983) (where the record on appeal clearly shows that there could have been no reasonable basis for a damaging decision or omission by trial counsel, judgment must be vacated and appropriate relief, such as the ordering of a new trial granted).

Judgment of sentence vacated and case remanded for a new trial. Jurisdiction relinquished.