J-S61022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLAYTON RAYMOND AXE | |
| Appellant | No. 490 MDA 2015 |

Appeal from the PCRA Order of March 3, 2015
In the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0001975-2011

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED DECEMBER 11, 2015**

Clayton Raymond Axe appeals the order denying his petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  We affirm.

In our memorandum responding to Axe's direct appeal, we related the factual and procedural history of this case as follows:

> In February of 2011, C.R. (the victim) lived with Ryan Eaton and her three-year-old son.  On February 12, 2011, Ryan Eaton and his cousin, Brandon Clutter, prepared to leave the house to attend an outdoor show.  At that time, Axe came to the house to tell the men about his nipple piercings.  The three men talked for about five minutes before leaving the house.  Ryan and Brandon left for the show, and Axe headed down the street towards his house.

---

[*]     Retired Senior Judge assigned to the Superior Court.

About two minutes after leaving the house, Axe returned and knocked upon the door. When the victim answered the door, Axe stated that he came back to speak with the victim about his ex-girlfriend. At this time, the victim was wearing a robe as she got ready to take a shower before travelling to her sister's house. The victim let Axe in and he took a seat on the couch; she sat across from him on the love seat. During this time, the victim's son was sitting nearby watching television. After talking for a short time, Axe told the victim he wanted to "have a little fun."

The victim told Axe she was not interested. Axe then got off the couch and sat down on his knees on the floor in front of the victim. He began kissing the victim's neck. The victim continued to tell him no and tried to push him away. Axe then undid his belt buckle and took out his penis. He told the victim to "play with it," and when she said no he grabbed her hand and placed it on his penis. The victim pulled her hand away and continued to tell Axe no.

Axe proceeded to grab the victim, pull her further down on the love seat, and open her robe. The victim again said no and tried to push him away. Axe was close to putting his penis inside the victim when Ryan walked back into the house to pick up the directions he forgot. Upon Ryan's entrance, Axe jumped up and ran to the bathroom, while the victim headed to her bedroom crying. When Ryan spoke to the victim, she told him to "get Axe out of the house." Ryan next spoke to Axe who told him, "I messed up."

During the police interview[1], Axe stated that he asked the victim if she wanted to "have some fun," she said "no," and then he exposed his penis. He told police that the victim said "no" several times. Axe admitted that it was his intent to have sex with the victim, and that he messed up by fooling around with his friend's ex-girlfriend.

_____

1 Defense counsel played pieces of the interview at trial.

Axe was subsequently charged with criminal attempt—rape by forcible compulsion,[2] criminal attempt—sexual assault,[3] indecent exposure,[4] and corruption of minors.[5] A jury convicted Axe of criminal attempt—sexual assault and indecent exposure. Axe was sentenced to incarceration for a minimum of 54 months,

maximum ten years for criminal attempt—sexual assault, and a minimum of six months, maximum twelve months for indecent exposure. The sentences run concurrently. In addition, Axe was required to register as a sexual offender with the Pennsylvania State Police for a minimum of ten years.

_____

[2] 18 Pa.C.S. § 901.

[3] 18 Pa.C.S. § 901.

[4] 18 Pa.C.S. § 3127(a).

[5] 18 Pa.C.S. § 6301(a)(1)(i).

***Commonwealth v. Axe***, 979 MDA 2012, slip op. at 1-4 (Pa. Super. June 27, 2013) (memorandum) (record citations omitted).

Axe initiated the instant matter by filing a timely PCRA petition on December 15, 2014.[1]  Therein, Axe raised, *inter alia*, two claims of ineffective assistance of trial counsel.  First, he maintained that trial counsel erred by not seeking to suppress Axe's self-incriminating statement to investigators.  Second, he contended that counsel was ineffective for failing to call Axe to the stand to testify in his defense.  After appointing PCRA counsel, the court held a hearing on Axe's petition on February 23, 2015.

_____

[1]    After this Court affirmed Axe's judgment of sentence, our Supreme Court denied Axe's petition for allowance of appeal on January 6, 2014. Axe's judgment of sentence became final ninety days later, on April 7, 2014, when the time period during which he could seek discretionary review before the United States Supreme Court expired. ***See*** U.S.Sup.Ct.R. 13; 42 Pa.C.S. § 9545(b)(3).  Axe filed his petition well within one year of April 7, 2014.

Ultimately, the PCRA court rejected these and other claims either at the hearing or in a later ruling, which was entered on March 4, 2015.

Axe filed the instant timely appeal of the PCRA court's denial of relief on March 12, 2015. On March 16, 2015, the PCRA court directed Axe to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Axe timely complied on April 1, 2015. Thereafter, the PCRA court filed an opinion pursuant to Rule 1925(a), ripening this matter for review.

Before this Court, Axe raises the following issues:

1. Whether the PCRA court erred in denying [Axe's] PCRA petition when trial counsel was ineffective fo[r] failing to file a pretrial motion to suppress [Axe's] involuntary and coerced statements to police?

2. Whether the PCRA court erred in denying [Axe's] PCRA petition when trial counsel was ineffective for advising [Axe] not to testify at trial despite [Axe's] desire to do so?

Brief for Axe at 4.

Our standard of review of a PCRA court order granting or denying relief under the PCRA calls upon us to determine "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012).

In both of Axe's issues, he contends that his trial attorney provided constitutionally ineffective assistance of counsel ("IAC"). Pennsylvania has recast the two-factor IAC inquiry set forth by the United States Supreme Court in ***Strickland v. Washington***, 466 U.S. 668 (1984), as a three-factor inquiry:

> [I]n order to obtain relief based on [an IAC] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

***Commonwealth v. Reed***, 971 A.2d 1216, 1221 (Pa. 2005) (citing ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987)). Trial counsel is presumed to be effective, and the appellant bears the burden of pleading and proving each of the three factors by a preponderance of the evidence. ***Commonwealth v. Rathfon***, 899 A.2d 365, 369 (Pa. Super. 2006); ***see also Commonwealth v. Meadows***, 787 A.2d 312, 319-20 (Pa. 2001). "Failure to establish any prong of the test will defeat an [IAC] claim." ***Commonwealth v. Walker***, 346 A.3d 1, 7 (Pa. 2011).

In his first issue, Axe maintains that trial counsel should have sought to suppress his statement to police upon the basis that the statement was involuntary under the circumstances. In order to determine whether trial counsel was ineffective for this reason, we must review the standard that determines whether a confession is voluntary. Whether a confession is

voluntary is a conclusion of law, subject to plenary, *de novo* review.

**Commonwealth v. Nester**, 709 A.2d 879, 881 (Pa. 1998).

> Voluntariness is determined from the totality of the circumstances surrounding the confession. The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.
>
> * * * *
>
> When assessing voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Id.* at 882 (citations omitted).

The PCRA court, which also presided over the trial, has provided a detailed account of its own review of Axe's entire statement:

> The initial interaction between [Axe] and the troopers is casual in nature and is clearly focused on the troopers trying to get some background information, such as [Axe's] full name and date of birth. After asking [Axe] some general questions about his interactions with the victim and her boyfriend on the day of the incident, Trooper [Christopher] Colarusso asked [Axe] if he knew why troopers wanted to talk to him. [Axe] said "I'm guessing about [C.R.] and Ryan." After explaining who [the victim] and Ryan were, [Axe] freely admitted that he was at their house that day. In response to being asked why he went over to Ryan and [the victim's house, Axe] said "Just to talk to Ryan, and then they left . . . . And I was gonna leave, and [the victim] talks to my ex-girlfriend a lot, and I wanted to talk to her about [the victim]—or to [the victim] about Carissa [*i.e.*, Axe's ex-girlfriend], and I guess it just happened. The very next question from Trooper Colarusso is, "Okay. Well, that's what we want to talk about, so tell me what happened." [Axe] said he

- 6 -

and [the victim] were talking about his ex-girlfriend and then his "penis was out [and] [s]he didn't have anything on under her robe [and] [h]er vagina was out."

Working off [Axe's] version of events, the troopers asked [Axe] how the situation went from them talking about his ex-girlfriend to his penis being out and [Axe] said that he asked the victim if she wanted to have sex, but she said no. [Axe] continued, "By then my penis was already out. And I mean I didn't—I don't know if you understand where I'm coming from. I didn't hold her down. I didn't force her. I don't know how else to explain it." Then he said Ryan walked back in the house.

[In t]he rest of the interview the troopers do press [Axe] for more specifics regarding the entire situation, and there certainly are points where the troopers cut [Axe] off. There are times when the troopers raise their voices. However, hearing the interview, it is clear that the raised voices come more from a place of disbelief as opposed to an attempt to coerce [Axe] into confessing. It was [Axe] who freely admitted that the victim said "no" more than once. And it was [Axe] who told troopers that he pulled his penis out even after the victim said she did not want to have sex.

As previously mentioned, [the PCRA court] listened to the entire interview again—even the redacted portions. Those parts of the interview consisted of troopers asking [Axe] about his prior record, which contained a crime similar in nature to the one with the current victim. One of the troopers interviewing [Axe] was the officer assigned to that earlier case, so there is a time in the interview where he is asking [Axe] if he "remembers him." [Axe] stated he did not. Overall, the redacted portions of the interview did not indicate to us that the interview was coercive in any way.

Despite [Axe's] testimony at his PCRA hearing that he was scared and felt anxious, we cannot conclude that his statements were coerced. At the end of the interview the troopers asked [Axe] if everything that he had just told them was the truth and [Axe] stated that it was. [Axe] was also asked whether he felt threatened or coerced into giving those statements and he answered no. Based on the totality of the circumstances, specifically the length of the interview, the attitude of the troopers, and psychological state of [Axe], we cannot conclude that [Axe's] statements were anything but voluntarily given.

- 7 -

PCRA Court Opinion ("P.C.O."), 4/16/2015, at 5-7 (citations omitted).

The trial court then turned to the **Pierce** standard. Despite finding that the statement, even including its redacted sections, was not coercive, the trial court bypassed the question of arguable merit and determined that trial counsel reasonably opted not to seek suppression. We find this conclusion questionable; whether to seek suppression of the statement and figuring out how to use it to the defense's advantage are not contemporaneous considerations, nor are they mutually exclusive. Nothing in trial counsel's PCRA testimony suggests that counsel had a reasonable basis for concluding that it was not worth at least attempting to seek suppression, given the centrality of the statement to the Commonwealth's case, even if counsel thought it very unlikely that the trial court would grant the motion.

That being said, we find implicit in the PCRA court's discussion the conclusion that this claim lacks arguable merit.[2] The PCRA court in no uncertain terms provided a detailed analysis based upon controlling law that established that, had trial counsel sought suppression of the statement, he would not have prevailed. This analysis and conclusion is supported by the record. Hence, the premise underlying Axe's argument that a suppression

---

[2]   This Court may affirm the PCRA court's decision upon any correct basis. **Commonwealth v. Ahlborn**, 683 A.2d 632, 641 n.14 (Pa. Super. 1996).

motion might have prevailed is unsound. Given that Axe has not pleaded and proved that his claim has arguable merit, we need go no further to conclude that this argument is unavailing.

In Axe's second issue, he contends that trial counsel was ineffective for discouraging him from testifying on his own behalf at trial.

> It is well settled that the decision to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to call the appellant to the stand, the appellant must demonstrate either (1) that counsel interfered with his right to testify, or (2) that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. Counsel is not ineffective where counsel's decision to not call the defendant was reasonable.

*Commonwealth v. Breisch*, 719 A.2d 352, 354-55 (Pa. Super. 1998) (citations and internal quotation marks omitted). Axe's argument proceeds only under the second theory, which hinges upon the reasonableness of counsel's advice discouraging the defendant from testifying.

Axe's argument in support of this issue, and specifically the reasonableness prong of the *Pierce* test, is quite brief:

> [Trial counsel] testified at the PCRA hearing that his reason for not wanting [Axe] to testify is he was worried how he would perform on the stand and he was worried that [Axe] would somehow open the door to prior bad acts. However, without [Axe's] testimony, the jury only heard from the Commonwealth witnesses and the coerced interrogation with absolutely no rebuttal. [Trial counsel] admitted [during the PCRA hearing] that if he could change anything he would have put [Axe] on the stand to testify.

Brief for Axe at 23.

Axe further argues that this Court's decision in **Breisch** compels this Court to conclude that Axe's trial counsel lacked a reasonable basis for discouraging Axe from testifying. In **Breisch**, this Court found arguable merit where the defendant claimed that counsel did not present her with the choice of whether to testify and asserted that she did not know that counsel did not intend to call her to testify until the defense rested. **See** 719 A.2d at 355. This Court further found no reasonable basis for counsel's choice. At the PCRA hearing in **Breisch**, counsel testified that he advised the defendant that he thought her testimony was unnecessary because he believed that cross-examination of the Commonwealth's witnesses would be sufficient to create reasonable doubt. Counsel further attested that he was worried about the defendant's ability to testify on her own behalf. Notably, the defendant in **Breisch** had no prior convictions, similar to the offense or otherwise, to which the defendant's testimony might open the door. As noted, *supra*, Axe not only had a prior offense but that offense shared certain characteristics with the assault alleged in this matter.

This case is distinguishable. First, Axe does not allege that trial counsel was deficient or tardy in informing him of his right to testify or in explaining the risks and benefits associated with that choice. Indeed, before the defense presented its case, Axe was carefully colloquied by the trial court regarding his right to testify on his own behalf. Axe indicated that he understood that he had that right, had reviewed his options with counsel, and chose voluntarily to waive that right. The trial court further made clear

to Axe that he could change his mind and testify on his own behalf at any time. *See* Notes of Trial Testimony, 1/9/2012, at 268. Second, Axe's attempt to minimize the importance of his prior offense, and the risk that an errant statement by him or his attorney could result in that offense being revealed to the jury, is utterly unconvincing. Plainly, the quantum of risk associated with the jury learning of a prior similar offense cannot be gainsaid, especially in a he-said-she-said case such as this one.

That trial counsel in the instant matter testified before the PCRA court that he regretted not calling Axe to the stand is not dispositive. This Court may not utilize hindsight in assessing the reasonableness of an attorney's decision in advance of and at the time of trial. ***Commonwealth v. Thomas***, 783 A.2d 328, 333 (Pa. Super. 2001) (quoting ***Commonwealth v. Basemore***, 744 A.2d 717, 735 (Pa. 2000)) ("[T]he reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight."). The only relevant inquiry is whether counsel's decision was reasonably crafted to serve his client's interests at the time the decision was made. In this case, the fact of Axe's prior record, alone, provided a reasonable basis for trial counsel to be leery of subjecting his client to cross-examination. Furthermore, it cannot be said that this left Axe with no defense: In opting to focus upon impeaching the confession upon which the Commonwealth's case principally rested, counsel made a reasonable tactical choice. As well, it cannot be said that the choice reaped no benefits; the jury in this matter acquitted Axe of the most serious charge, attempted rape

by forcible compulsion. Thus, the record supported the PCRA court's determination that trial counsel's advice reasonable, and Axe is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015