J-S40045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                                    :
             v.                       :
                                      :
                                      :
MOHAMMED KAMANA           :
                                      :
            Appellant            :    No. 867 EDA 2022

Appeal from the PCRA Order Entered February 28, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006317-2015

BEFORE: NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                  **FILED FEBRUARY 26, 2024**

Appellant, Mohammed Kamana,[1] appeals from the order of the Court of

Common Pleas of Philadelphia County that dismissed his first petition filed

under the Post Conviction Relief Act (PCRA)[2] without a hearing. For the

reasons set forth below, we affirm.

Appellant and his co-defendant, Mustafa Crenshaw, were charged with

attempted murder, aggravated assault, criminal conspiracy, possession of a

firearm by a prohibited person, carrying a firearm without a license, and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's name is also referred to in the record in this case as Mohammed Kamara. This Court for ease of discussion will refer to him as Appellant.

[2] 42 Pa.C.S. §§ 9541–9546.

carrying a firearm on the streets of Philadelphia for shooting a man (Victim) in the back on April 13, 2015. The shooting occurred after Appellant, who had been in a dispute with Victim several days earlier, and his co-defendant pulled up to Victim in a white car near the intersection of 67th Street and Elmwood Avenue in Philadelphia, exited the car, and began fighting with Victim. *Commonwealth v. Kamana*, No. 3446 EDA 2017, slip op. at 1-2 (Pa. Super. June 7, 2019) (unpublished memorandum). During the fight, Appellant's co-defendant passed a gun to Appellant, who then shot Victim. *Id.* at 2.

A jury trial of the charges against Appellant and his co-defendant, other than possession of a firearm by a prohibited person, was held from March 20 to March 29, 2017. Eight witnesses testified at the trial of Appellant and his co-defendant: Victim, a SEPTA bus driver who witnessed the shooting, and six police officers and detectives. In addition, a video recording from a store on the southwest corner of 67th and Elmwood was played.

Victim testified that as he was leaving a store on Elmwood Avenue on April 13, 2015, Appellant and Appellant's co-defendant, both of whom he knew from the neighborhood, drove up in a white car. N.T. Trial, 3/23/17, at 131, 135-38. Victim testified that he had been in a verbal argument with them a few days earlier and that when Appellant and Appellant's co-defendant got out of the car, they walked toward him looking like they wanted to fight. *Id.* at 131-35, 139. Victim testified that he began fighting with Appellant and Appellant's co-defendant and that Appellant's co-defendant passed a gun to

Appellant and Appellant pointed the gun at Victim. *Id.* at 139-40, 166-67. Victim testified that he turned to run away, but that the gun went off and he was shot in the back. *Id.* at 131, 139-40, 166-67. He testified after he was shot, his friends helped him into a red car and drove him to the hospital. *Id.* at 140-41. Victim admitted that at the hospital he told the police that he didn't know who shot him and that he identified Appellant and Appellant's co-defendant later only after the police had threatened to lock him up. *Id.* at 142,146-48, 163-65.

The bus driver testified that on April 13, 2015, when she was driving her bus on her route and was stopped at a red light at 67th and Elmwood, she saw what she thought was a bunch of kids horsing around or fighting at the corner and heard a pop. N.T. Trial, 3/24/17, at 142-44. The bus driver testified that after she heard the pop, she turned the bus onto 67th Street, drove a couple of blocks further, flagged down a police officer, and reported that there had been a shooting and its location. *Id.* at 143-45. Although the bus driver testified at trial that she did not see anyone pull out a gun before she heard the pop, she admitted that she gave a signed statement to police on April 17, 2015, in which she stated that she saw one of the people in the fight fire a gun. *Id.* at 144, 146-49, 154, 162-63. The statement, which the bus driver admitted accurately reported what she told police on that date and the officer testified was a verbatim report of his questions and her answers that she signed, was read into and admitted in evidence. *Id.* at 146-54; N.T.

Trial, 3/27/17, at 28-29, 81-82. In that statement, the bus driver reported that the shooter was "[m]aybe 5'8", regular size" and that she heard the shooter talking with an African or Jamaican accent. N.T. Trial, 3/24/17, at 149-50, 167-68. The bus driver testified that she did not see the shooter's face and could not identify Appellant or his co-defendant as having been at the scene of the shooting. *Id.* at 163-64, 166-67, 170.

The video showed that a white car pulled up at the 67th and Elmwood intersection at approximately 1:19 p.m. on April 13, 2015, that two people got out of the white car, and that there was commotion involving several people while a SEPTA bus was at the opposite corner. N.T. Trial, 3/23/17, at 96, 98-100, 104-06, 110; N.T. Trial, 3/24/17, at 7-8. The video showed people then getting into the white car and driving off, other people then entering a red car and driving away in a different direction, and police arriving at the scene approximately four minutes after both cars had left. N.T. Trial, 3/23/17, at 100-02. Police witnesses testified that a recently fired cartridge casing was found at the scene. N.T. Trial, 3/23/17, at 55-56; N.T. Trial, 3/24/17, at 12-13, 31-32; N.T. Trial, 3/27/17, at 21-22.

At the end of the first week of the trial, before the bus driver testified, the Commonwealth disclosed that the police officer who arrested Appellant would testify from personal knowledge that Appellant sometimes speaks with an African accent and that it also had prison telephone call recordings, which it did not intend to introduce in its case in chief, showing Appellant speaking

with an African accent.  N.T. Trial, 3/24/17, at 111-13, 135-36.  Appellant's counsel objected to this evidence on the ground that it had not been disclosed in discovery, and the trial court delayed the arresting officer's testimony to permit counsel to listen to the prison call recordings and prepare for the testimony.  *Id.* at 113-14, 116-37.

After Appellant's trial counsel listened to the prison call recordings, the trial court permitted the Commonwealth to ask the arresting officer about Appellant's accent.  N.T. Trial, 3/27/17, at 47-48.  The arresting officer testified that he was familiar with Appellant from interactions with the community that he patrolled and had spoken with Appellant and heard Appellant speaking with others.  *Id.* at 58-60.  The arresting officer testified that he has heard Appellant speak "with an African dialect" at times and at other times speak with no accent.  *Id.* at 60.  The arresting officer further testified that on April 24, 2015 at approximately 5:00 a.m., he went with other officers to 2105 South 65th Street, which was not Appellant's house, to arrest Appellant.  *Id.* at 64, 71.  The arresting officer testified that after he knocked on the door, he saw Appellant look out the front ground floor window at him.  *Id.* at 64-65.  The arresting officer testified that he identified himself and asked Appellant to open the door and that Appellant then fled up the stairs, did not respond to officers banging on the door, and came down and unlocked the door only after officers had opened the front window.  *Id.* at 65-67, 72-73.  The arresting officer testified that the biographical information filled out

after Appellant's arrest in this case stated that Appellant was born in Liberia and that Appellant's height was 6'1". *Id.* at 68-70.

Neither Appellant nor his co-defendant testified or called any witnesses. Prior to trial, Appellant's trial counsel had filed a notice of alibi defense listing Muna Turay and Laye Donzo as alibi witnesses who would testify that Appellant was with them at a remembrance service for a deceased relative at the time of the shooting. 3/16/16 Notice of Alibi. After listening to the prison call recordings, however, trial counsel withdrew the alibi defense. N.T. Trial, 3/27/17, at 55. After the Commonwealth rested, the trial court conducted a colloquy of Appellant on whether he wished to testify and call witnesses. *Id.* at 87-89. In this colloquy, Appellant testified that he discussed whether to testify with trial counsel, that following those discussions, he chose not to testify, and that he was not threatened and made the decision not to testify of his own free will. *Id.* at 88-89. With respect to calling witnesses, Appellant responded to the trial court's questions as follows:

> THE COURT: All right, sir. And were there witnesses that you gave names of and addresses and information for your lawyer to contact that you wish to have called in this case that were not called?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Your lawyer has indicated that he did contact certain witnesses that were listed on an alibi notice that he provided the Court with, and today he's indicated those witnesses would not be called. Is that your decision to not call those witnesses as well?
>
> THE DEFENDANT: Yes, ma'am.

- 6 -

*Id.* at 89. In its charge, the trial court included an instruction that the jury could infer consciousness of guilt from the evidence that Appellant hid or fled from police. N.T. Trial, 3/28/17, at 39-40.

On March 29, 2017, the jury convicted Appellant of attempted murder, aggravated assault, criminal conspiracy, possession of an instrument of a crime, carrying a firearm without a license, and carrying a firearm on the streets of Philadelphia. N.T. Trial, 3/29/17, at 3-5, 7-9; Verdict Slip. The jury convicted Appellant's co-defendant of aggravated assault, criminal conspiracy, possession of an instrument of a crime, carrying a firearm without a license, and carrying a firearm on the streets of Philadelphia, but acquitted him of attempted murder. N.T. Trial, 3/29/17, at 5-10. Both Appellant and his co-defendant waived their right to a jury trial of the possession of a firearm by a prohibited person charge, and the trial court found Appellant and his co-defendant guilty of that offense, following a hearing at which they stipulated to their prior convictions. *Id.* at 10-19.

The trial court, on June 9, 2017, sentenced Appellant to an aggregate term of imprisonment of $11^1/_2$ to 23 years followed by 10 years' probation, consisting of consecutive terms of imprisonment of 9 to 18 years and $2^1/_2$ to 5 years for the attempted murder and conspiracy convictions, followed by concurrent terms of probation of 10, 7, 5, and 5 years for the firearms and possession of an instrument of crime convictions, and no further penalty for aggravated assault. N.T. Sentencing at 68; Sentencing Order, 6/9/17.

Appellant filed post-sentence motions, which were denied by operation of law, and timely appealed from his judgment of sentence. On June 7, 2019, this Court affirmed Appellant's convictions, but vacated his consecutive conspiracy sentence, and, because this disturbed the trial court's sentencing scheme, vacated the entire judgment of sentence and remanded for resentencing. *Kamana*, No. 3446 EDA 2017, slip op. at 20. Appellant did not file a petition for allowance of appeal.

On August 20, 2019, the trial court resentenced Appellant to an aggregate term of imprisonment of $11^1/_2$ to 23 years followed by 10 years' probation, consisting of consecutive terms 9 to 18 years and $2^1/_2$ to 5 years for the attempted murder and possession of a firearm by a prohibited person convictions, two consecutive 5-year terms of probation for the other firearms convictions, a concurrent 5 years' probation for possession of an instrument of crime, and no further penalty for the aggravated assault and conspiracy convictions. Sentencing Order, 8/20/19. Appellant did not file a direct appeal from this judgment of sentence.

On August 12, 2020, Appellant filed a timely *pro se* first PCRA petition. PCRA counsel was appointed and filed an amended PCRA petition on May 13, 2021, asserting claims of ineffective assistance of counsel and newly discovered evidence. The amended PCRA petition asserted that Appellant's trial counsel was ineffective in failing to call Turay, Donzo, and a third alibi witness, Abdulai Gassama, to testify that at the time of the shooting they were

with Appellant at Appellant's relative's gravesite and prior to going to the gravesite, that trial counsel was ineffective in failing to call those witnesses to testify that Appellant does not speak with an African accent, and that trial counsel was ineffective in failing to call Appellant to testify in his own defense. Amended PCRA Petition at 7-8, 13-15. The amended PCRA petition alleged two items of newly discovered evidence, statements of Victim's sister concerning Victim's identification of who shot him and a statement of Eugene Patterson, a friend of Appellant who was at the house where Appellant was arrested, and also alleged that trial counsel was ineffective in failing to call Patterson as a witness at trial to testify that Appellant stayed at that house often and that Patterson, not Appellant, was the person who looked out the window and ran upstairs when police arrived. *Id.* at 15-16, 22-26.

On February 3, 2022, the PCRA court issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss all of Appellant's PCRA claims without a hearing. In this notice, the PCRA court stated that no hearing was necessary because Appellant at trial represented to the court that he did not wish to call the alibi witnesses, that there were no witnesses he wanted to call, and that it was his own voluntary decision to not testify on his own behalf, because testimony that Appellant does not speak with an accent would not have been beneficial to Appellant in light of the Commonwealth's recordings of him speaking with an accent, because there was no basis to conclude that Victim's sister would testify as Appellant sought, and because Patterson's statement

did not satisfy the requirements for newly discovered evidence. PCRA Court Notice of Intent to Dismiss at 2-6. Appellant filed a response to the PCRA court's Rule 907 notice, in which he made arguments in support of his PCRA claims and asserted that a hearing was necessary. On February 28, 2022, the PCRA court dismissed Appellant's PCRA petition without a hearing. Trial Court Order, 2/28/22

On March 25, 2022, Appellant timely appealed. On March 3, 2023, before briefs were filed in this appeal, Appellant filed an application seeking to remand the case to the PCRA court to present newly discovered evidence of another witness, Nile Montgomery, who stated in an affidavit dated November 9, 2022, that he witnessed the April 13, 2015 shooting, that he saw Appellant's co-defendant and another person that he knew, who he identified as "Ju" get out of the white car and argue with Victim, that "Ju" shot Victim, and that Appellant was not present. Application to Remand at 2-3 & Ex. A. On March 27, 2023, this Court denied the application to remand without prejudice to Appellant's right to raise this issue in his brief before the merits panel. 3/27/23 Order.

In his brief, Appellant raises the following six issues: whether the PCRA court erred in dismissing four claims of ineffective assistance of his trial counsel without a hearing, (1) failure to call Appellant to testify in his own defense; (2) failure to call alibi witnesses; (3) failure to call witnesses to testify that Appellant does not speak with an African accent; and (4) failure to call

Patterson as a witness to refute the Commonwealth's claim that Appellant fled police; (5) whether the PCRA court erred in dismissing his newly discovered evidence claim concerning Victim's sister; and (6) whether remand is required for a hearing on a newly discovered evidence claim based on Montgomery's post-appeal affidavit.

We review the dismissal of a PCRA petition to determine whether the court's decision is supported by the record and free of legal error. **Commonwealth v. Staton**, 120 A.3d 277, 283 (Pa. 2015); **Commonwealth v. Grayson**, 212 A.3d 1047, 1051 (Pa. Super. 2019); **Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa. Super. 2012). A court may properly dismiss a PCRA claim without a hearing where the defendant has not set forth a sufficient claim for PCRA relief or if it is clear from the record that the claim is patently without merit. Pa.R.Crim.P. 907(1); **Commonwealth v. Sneed**, 45 A.3d 1096, 1107 (Pa. 2012); **Wah**, 42 A.3d at 338.

Appellant's first four issues involve claims of ineffective assistance of Appellant's trial counsel. To be entitled to relief on a claim of ineffective assistance of counsel, the defendant must prove: (1) that the underlying claim is of arguable merit; (2) that counsel's action or inaction had no reasonable basis; and (3) that he suffered prejudice as a result of counsel's action or inaction. **Commonwealth v. Mason**, 130 A.3d 601, 618 (Pa. 2015); **Commonwealth v. Washington**, 269 A.3d 1255, 1263 (Pa. Super. 2022) (*en banc*); **Commonwealth v. Selenski**, 228 A.3d 8, 15 (Pa. Super. 2020).

The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. *Mason*, 130 A.3d at 618; *Selenski*, 228 A.3d at 15.

The decision whether to testify in one's own defense is a decision made by the defendant himself after consultation with counsel. *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000); *Washington*, 269 A.3d at 1264; *Commonwealth v. Sandusky*, 203 A.3d 1033, 1075 (Pa. Super. 2019). Where, as here, the defendant represents to the court in a colloquy that he voluntarily waives his right to testify, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand. *Sandusky*, 203 A.3d at 1075; *Commonwealth v. Rigg*, 84 A.3d 1080, 1086 (Pa. Super. 2014). In such a situation, a claim of ineffectiveness of counsel in advising his client not to testify may be sustained only if the defendant shows that his counsel gave him specific advice that was so unreasonable as to vitiate a knowing and intelligent decision whether to testify on his own behalf. *Nieves*, 746 A.2d at 1104; *Rigg*, 84 A.3d at 1086. Advice not to testify has been held sufficiently unreasonable to constitute ineffective assistance of counsel where the defendant shows that counsel advised him not to testify based on an erroneous belief that evidence harmful to his case would come before the jury if he testified. *Nieves*, 746 A.2d at 1104-06; *Washington*, 269 A.3d at 1265-68. In contrast, where counsel bases his advice not to testify on a founded concern that the defendant's testimony will result in harmful evidence coming to the jury's attention, the advice not to testify is reasonable and does

not constitute ineffective assistance of counsel. **Sandusky**, 203 A.3d at 1075-76.

Here, Appellant did not allege any basis on which it could be concluded that his trial counsel's advice to not testify was based on an erroneous belief or was unreasonable. Appellant alleged in his PCRA petition that trial counsel advised him not to testify because his testimony would result in evidence that he spoke with an African accent, which would be harmful to his defense because it would be consistent with the identification of the shooter by the bus driver. Amended PCRA Petition at 14 & attached Certification of Appellant. That advice was not erroneous. Although Appellant contends that he does not have an accent and trial counsel should have known that, the record shows that trial counsel knew that Appellant could speak without an accent and gave his advice after he became aware that the Commonwealth had recordings of Appellant speaking with an African accent and had listened to those recordings. N.T. Trial, 3/24/17, at 112, 122-25, 135; N.T. Trial, 3/27/17, at 48-49, 88-89. Appellant notably did not dispute in his PCRA petition that the recordings on which counsel based his advice showed Appellant speaking with an African accent. The record therefore establishes that trial counsel had a reasonable basis to believe that Appellant's testimony would result in additional harmful evidence concerning Appellant's accent that was far stronger than the arresting officer's testimony, as Appellant's testimony would result in Appellant breaking into an African accent during his testimony or, if

Appellant did not, either admission by Appellant on cross-examination that he does sometimes speak with an African accent or the playing of recordings showing him speaking with an African accent.

*Commonwealth v. Breisch*, 719 A.2d 352 (Pa. Super. 1998), on which Appellant relies, does not support his contention that his PCRA petition set forth a potentially meritorious claim that counsel was ineffective in advising him not to testify. In *Breisch*, this Court held that ineffective assistance of counsel was shown where the defendant's testimony was the sole evidence to support her defense that she was given authorization to sign the checks on which forgery charges against her were based, counsel had no basis to believe that the defendant's testimony would result in admission of harmful evidence, and there was no evidence that the defendant agreed to the decision not to testify. *Id.* at 355-57. None of those factors is present here. To the contrary, Appellant's testimony was not necessary to support a defense, as his alibi defense could be proved through other witnesses named in his notice of alibi without Appellant's testimony. Moreover, as discussed above, trial counsel had a reasonable basis to conclude that Appellant's testimony would result in harmful evidence, and the record shows that Appellant confirmed to the trial court that he made a voluntary decision not to testify following consultation with trial counsel. N.T. Trial, 3/27/17, at 88-89. Because the trial record shows that Appellant made a voluntary decision not to testify after consultation with trial counsel and the advice that Appellant alleges that

counsel gave was not based on an erroneous assumption or belief, the PCRA court did not err in dismissing this claim for PCRA relief without a hearing.

Appellant's remaining three claims of ineffective assistance of counsel all involve claims of failure to call certain witnesses to testify on particular subjects. Failure to call a witness can constitute ineffective assistance of counsel only where the defendant shows that the witness existed, was available, and was willing to testify on the defendant's behalf; that trial counsel knew or should have known of the witness's existence; and that the absence of the witness's testimony prejudiced the defendant. **Sneed**, 45 A.3d at 1108–09; **Selenski**, 228 A.3d at 16. In addition, failure to call a witness does not constitute ineffective assistance of counsel where counsel made a decision not to call the witness based on a reasonable strategic judgment that the witness, even if favorable to the defendant on some points, would be harmful to the defendant's case. **Commonwealth v. Ervin**, 766 A.2d 859, 866 (Pa. Super. 2000).

The PCRA court did not err in dismissing Appellant's claim that trial counsel was ineffective for failure to call Patterson as a witness without a hearing because Appellant did not allege in his PCRA petition that his trial counsel knew or should have known that Patterson was a relevant witness. Appellant's PCRA petition did not assert that Appellant ever gave Patterson's name to trial counsel as a witness or told him that Patterson could provide evidence contradicting the arresting officer's testimony. Amended PCRA

Petition at 22-25. Neither Appellant nor Patterson stated in their attached certifications that trial counsel was advised that Patterson was the person who fled from the police when they came to arrest Appellant or that Patterson would testify that Appellant frequently stayed at the house where he was arrested before the shooting occurred. Rather, Patterson's certification described only the facts to which he would testify and Appellant's certification discussed only the testimony that Appellant would have given, his desire to testify, and counsel's advice not to testify. *Id.*, Certification of Eugene Patterson and Certification of Appellant. Indeed, the PCRA petition argued that Patterson's statement was newly discovered evidence that was not available to counsel at trial, and Appellant admitted to the trial court, after the arresting officer's testimony, that there were no witnesses that he wished to call whose names and addresses he gave to counsel. *Id.* at 25; N.T. Trial, 3/27/17, at 89.

Appellant did allege in his PCRA petition that his trial counsel was aware of the alibi witnesses and witnesses that he contends would testify that he did not have an African accent. Appellant submitted with his PCRA petition witness certifications of Gassama, Turay, and Donzo stating that trial counsel spoke to them about testifying. Amended PCRA Petition, Certification of Abdulai Gassama, Certification of Memuna Turay at 2, and Certification of Laye Donzo at 2. All three of these witnesses stated in their certifications that they would have testified that they were with Appellant at a memorial service in

- 16 -

another location in Philadelphia on the day of the shooting, and Gassama and Turay stated that they would also have testified that Appellant does not have an accent. ***Id.***, Certification of Abdulai Gassama, Certification of Memuna Turay at 1, and Certification of Laye Donzo at 1-2. In addition, the record showed that trial counsel listed Turay and Donzo as alibi witnesses. 3/16/16 Notice of Alibi.

Appellant, however, was questioned by the court at trial on whether he wanted to call witnesses and represented to the court that he did not wish to call any witnesses. N.T. Trial, 3/27/17, at 89. Where a defendant represents to the trial court that the decision not to call witnesses is his own decision and his decision not to call witnesses is knowing, intelligent, and voluntary, the defendant is bound by those representations and cannot successfully assert a claim that trial counsel was ineffective for failing to call witnesses. ***Commonwealth v. Rios***, 920 A.2d 790, 803 (Pa. 2007), ***overruled on other issue***, ***Commonwealth v. Tharp***, 101 A.3d 736 (Pa. 2014); ***Commonwealth v. Paddy***, 800 A.2d 294, 316 (Pa. 2002); ***Commonwealth v. Pander***, 100 A.3d 626, 642-43 (Pa. Super. 2014) (*en banc*). The purpose of this rule is to prevent a defendant from "build[ing] into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." ***Paddy***, 800 A.2d at 316.

Appellant's claims concerning failure to call witnesses to testify that he does not speak with an accent and failure to call alibi witnesses are barred by

his representation that he did not want to call witnesses. Appellant's decision not to call witnesses concerning his accent was plainly knowing, intelligent, and voluntary for the same reason as his claim concerning counsel's advice to not testify failed. It is clear on the face of the record that Appellant could not show that trial counsel's advice not to call witnesses to testify that Appellant did not have an accent was unreasonable because the trial transcript shows that counsel made the decision not to call witnesses after he listened to the Commonwealth's recordings of Appellant speaking with an African accent. N.T. Trial, 3/24/17, at 112, 135; N.T. Trial, 3/27/17, at 48-49, 55. Given the Commonwealth's ability to show Appellant speaking with an African accent, calling witnesses on the issue of Appellant's accent would only emphasize and result in more conclusive evidence on a point harmful to Appellant's defense. Because the record establishes that trial counsel cannot be shown to have acted without any reasonable basis in advising Appellant to not call witnesses to testify that Appellant speaks without an accent and Appellant's waiver of his right to call witnesses on this subject was therefore knowing, intelligent, and voluntary, the PCRA court properly dismissed this claim without a hearing.

Although the trial record by itself would not conclusively preclude Appellant from showing that his decision not to call alibi witnesses was knowing, intelligent, and voluntary, Appellant, did not plead anywhere in his PCRA petition or his response to the PCRA court's Rule 907 notice what advice counsel gave him on whether one or more of the alibi witnesses should be

called to testify or the grounds on which counsel based his advice concerning these witnesses. To the contrary, Appellant in his PCRA petition only discussed trial counsel's knowledge of the alibi witnesses, their availability, and the alleged value of the alibi testimony to his defense, not the advice that counsel gave Appellant on calling these witnesses, and the only advice that Appellant alleged that counsel gave him concerned the issue of whether Appellant should testify in his own defense. Amended PCRA Petition at 10-12 & Certification of Appellant. In response to the PCRA court's Rule 907 notice, which advised Appellant that his claim concerning failure to call these witnesses was subject to dismissal based on his statements in his colloquy, PCRA Court Notice of Intent to Dismiss at 2-3, Appellant again only argued the merits of his PCRA claim concerning the alibi witnesses and made no allegations concerning any specific advice from counsel that could have rendered Appellant's waiver of calling these witnesses unknowing or unintelligent. Objections to Rule 907 Notice at 4-7. Indeed, in his brief in this Court, Appellant admits that "we do not know what advice was given" by counsel to Appellant concerning the calling of alibi witnesses "and whether it was appropriate under the circumstances." Appellant's Brief at 28. Because Appellant failed to make any allegation sufficient to permit a finding that counsel's advice not to call alibi witnesses was so unreasonable as to make Appellant's agreement not call these witnesses unknowing and unintelligent, *see Nieves*, 746 A.2d at 1104 (erroneous advice by counsel can vitiate a

defendant's otherwise valid waiver of his rights), the PCRA court did not err in dismissing this claim for relief without a hearing.

Appellant's remaining two issues involve claims for relief based on newly discovered evidence. To prevail on such a claim, the defendant must prove (1) that the exculpatory evidence was discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) that this new evidence is not merely corroborative or cumulative of evidence that was admitted at trial; (3) that the new evidence is not being used solely to impeach credibility; and (4) that the new evidence would likely result in a different verdict. *Commonwealth v. Tedford*, 228 A.3d 891, 911 (Pa. 2020); *Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018); *Commonwealth v. Johnson*, 179 A.3d 1105, 1123 (Pa. Super. 2018). All four of these requirements must be proved, and if the defendant fails to establish any one of these, the after-discovered evidence claim fails. *Small*, 189 A.3d at 972; *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010).

The first of Appellant's newly discovered evidence claims in this appeal is based on allegations that Victim's sister told PCRA counsel that Victim admitted to her that Appellant did not shoot him and that the shooter was another person known as "Majou." Amended PCRA Petition at 15. This claim for PCRA relief was insufficient on its face because Appellant admitted in the PCRA petition that Victim's sister is unwilling to testify to those facts and denies that Victim made any such statements to her. *Id.* at 15 & text

messages attached thereto as Exhibit D at 10-17. Although PCRA counsel alleged that Victim's sister made those statements to him prior to her later denials, her statements to counsel were not contemporaneously electronically recorded, set out in a writing signed by her, or given under oath and therefore cannot be admissible for the truth of their contents under Pa.R.E. 803.1.

The only basis on which Appellant asserts that Victim's sister's out-of-court statements could be admissible for their truth is as statements against interest. That argument is without merit. A statement is admissible as a statement against interest only if it is contrary to the declarant's financial interest or exposes the declarant to criminal liability. Pa.R.E. 804(b)(3); ***Commonwealth v. Brown***, 52 A.3d 1139, 1176 (Pa. 2012). Telling PCRA counsel that her brother told her that Appellant did not shoot him did not expose Victim's sister to financial harm, as there is no claim that she had any financial interest affected by the shooting or the identity of the shooter. Nor could her statements expose her to criminal liability, as she never testified under oath on the subject and the statements that she reported did not implicate her in any crime. Because the only newly discovered evidence from Victim's sister would not be admissible at trial, this evidence could not possibly have resulted in a different verdict. The PCRA court therefore properly dismissed this claim for relief without a hearing.

Appellant's remaining newly discovered evidence claim, a claim based on the statement of alleged eyewitness Montgomery, was never presented to

or ruled on by the PCRA court. We therefore cannot rule on the merits of this claim. Pa.R.A.P. 302(a) ("Issues not raised in the trial court … cannot be raised for the first time on appeal"). The relief that Appellant is seeking from this Court on this issue, however, is a remand to permit him to present this claim to the PCRA court.

The affidavit of Montgomery stating that he witnessed the shooting and that Appellant was not at the scene is dated November 9, 2022, over seven months after the dismissal of his PCRA petition and the filing of this appeal and indicates that Montgomery did not tell Appellant that he witnessed the shooting until a relatively short time before he signed the affidavit. Application to Remand at 2 & Ex. A. Appellant therefore could not have raised this claim before the PCRA court after he alleges that he first learned of this evidence. **Commonwealth v. Lark**, 746 A.2d 585, 588 (Pa. 2000) ("when an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review"), **overruled on other issue**, **Commonwealth v. Small**, 238 A.3d 1267 (Pa. 2020); **Commonwealth v. Beatty**, 207 A.3d 957, 961 (Pa. Super. 2019).

Remand, however, is unnecessary because Appellant can raise this claim by a second PCRA petition after the conclusion of this appeal. If a defendant, while an appeal from denial of an earlier PCRA petition is pending, learns of

new evidence that could not have been discovered earlier in the exercise of due diligence, a PCRA petition asserting that claim is not time-barred if it is filed within the time period provided by 42 Pa.C.S. § 9545(b)(2) after final resolution of the appeal. ***Lark***, 746 A.2d at 588; ***Beatty***, 207 A.3d at 963. In that situation, final resolution of the appeal "is the first 'date the claim could have been presented.'" ***Lark***, 746 A.2d at 588 (quoting 42 Pa.C.S. § 9545(b)(2)).

For the foregoing reasons, we conclude that the PCRA court did not err in dismissing Appellant's claims of ineffective assistance of counsel and newly discovered evidence without a hearing and that no remand is necessary with respect to Appellant's claim of newly discovered evidence during the pendency of this appeal. We therefore affirm the order of the PCRA court and deny Appellant's motion to remand.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/26/2024

- 23 -